**NATIONAL LABOR RELATIONS BOARD v. STATE CENTER WAREHOUSE & COLD STORAGE CO.**

No. 12815.

United States Court of Appeals Ninth Circuit.

Nov. 27, 1951.

George J. Bott, General Counsel, David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel and Marshall J. Seidman, Attorneys, NLRB., all of Washington, D. C., for petitioner.

Howard B. Thomas and Baxter Richardson, Fresno, Cal., for respondent.

Before HEALY and ORR, Circuit Judges, and LEMMON, District Judge.

HEALY, Circuit Judge.

This matter is here on petition of the National Labor Relations Board for enforcement of an order directed against respondent.

Acting upon charges filed by the International Brotherhood of Teamsters, Local No. 431, herein called the Union, the Board issued its complaint alleging that respondent threatened to close its plant if its employees joined the Union, interrogated its employees regarding their union activities, threatened to discharge them for union membership, and discharged one Moses Machoian because of his membership and activity in the Union, in violation of sections 8(a) (1) and (3) of the Act, 29 U.S.C.A. § 158(a) (1, 3). In harmony with the report of the trial examiner the Board found that respondent had violated the Act as charged, and it ordered respondent to cease and desist, to post appropriate notices and to make Machoian whole for any loss suffered as a result of his discriminatory dismissal.

The principal question argued has to do with the sufficiency of the evidence to sustain the findings. While the case may be thought a close one we are of opinion that considering the record as a whole the showing is sufficient to sustain the Board's position.

■ Respondent is a family corporation having but five employees, most of whom, like the owners, are Armenians. On the hearing before the examiner some difficulties of language and comprehension were encountered. The testimony for respondent came from members of the family or from employees having a social relationship with the family. Concerning the salient points the testimony is in direct conflict. Generally speaking, the examiner gave credence to the testimony of former employees, who appeared to him to testify without reluctance; whereas he noted some hesitancy on the part of employees still on the job.[1] For obvious reasons, questions of credibility were for the examiner. While respondent charges him with bias, we are unable to see any evidence of unfairness on his part.

■ The respondent first learned of its employees' interest in the Union in January 1949, through its labor relations consultant. Following receipt of the latter's report it was officially advised that the Union had petitioned the Board for an election. The testimony credited by the examiner was that shortly thereafter Louise Mosesian, daughter of respondent's president,[2] interrogated each of the employees as to his union membership. All denied having joined. Louise said she knew who had already signed up or could find out anyway, and she reminded the men that "Mama" (respondent's president) "could always shut [the warehouse] or rent it out." There was evidence that Louise continued her efforts to ascertain the feelings of each employee in respect of union membership. Shortly before the representation election she is found to have stopped one Krikorian, an employee, and said to him, "I know you will vote against

---

1. The examiner credited in its entirety only the testimony of witnesses Krikorian and Justice, both of whom were called by respondent. Justice, the warehouse foreman, appears to have been still in respondent's employ at the time of the hearing.

2. Louise was an officer and heavy stockholder, who with two other officers was in the active management of the warehouse enterprise and had charge of matters of discipline.

the union, but how about Eddie?" [3] Krikorian replied, "Eddie would vote the same way I would." The examiner found, also, that Mrs. Mosesian, respondent's president, told her housekeeper to inform a certain employee that if the latter belonged to the Union "I don't keep him." The housekeeper conveyed the message to the employee. The examiner found that this incident occurred prior to the election.

As regards the employee Machoian, the respondent claims that his discharge was for violation of a rule prohibiting smoking in the warehouse. There was considerable evidence tending to show that the no-smoking rule was more honored in the breach than in the observance. Even Justice, the warehouse foreman, admitted frequently smoking there and said nobody ever told him not to smoke. Machoian had been characterized by Louise Mosesian as "a good worker," and there was evidence tending substantially to prove that his discharge was owing to a belief of the Mosesians that he had been active in the union movement at their warehouse. During the period in question the Mosesians had learned from one Sohigian, a friend of the family, that Machoian while in Sohigian's employ had organized the union at the latter's plant. As to this aspect of the case it is enough to say that the finding of a discriminatory discharge of this employee is substantially supported.

Respondent contends that the Board failed to observe the requirements of section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), by making a ruling or finding on each exception of the respondent to the examiner's intermediate report. However, the Board's decision and order, which save for certain specified particulars adopted the findings and conclusions of the examiner, unmistakably informed respondent of its rulings on exceptions. Further particularity is not required.

Other points argued are without substance.

A decree will be entered enforcing the order as prayed in the Board's petition.

3. Eddie was another employee.