## NATIONAL LABOR RELATIONS BOARD v. SWINERTON et al.

### No. 13303.

United States Court of Appeals
Ninth Circuit.

Feb. 17, 1953.

512

George J. Bott, Gen. Counsel, David P. Finding, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Elizabeth W. Weston and Abraham Siegel, Attys., N. L.R.B., Washington, D. C., for petitioner.

Gardiner Johnson, Thomas E. Stanton, Jr., San Francisco, Cal., for respondents Swinerton, Jabez Burns & Sons, and others.

Before DENMAN, Chief Judge, and HEALY and ORR, Circuit Judges.

ORR, Circuit Judge:

The National Labor Relations Board seeks enforcement of an order requiring respondents to cease and desist from certain unfair labor practices and to take certain affirmative action which the Board found would effectuate the policies of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., as amended by the Labor Management Relations Act of 1947, 29 U. S.C.A. § 141 et seq. The order is based upon the conclusions of the Board and the Trial Examiner that respondents refused to hire certain specified workmen because of lack of membership in or referral by Local 102, United Brotherhood of Carpenters & Joiners of America, herein called the Millwrights; that respondents by their discriminatory hiring policy discouraged membership in the International Association of

Machinists, herein called the Machinists; that such conduct was in violation of § 8(a)(3) of the Act, 29 U.S.C.A. § 158(a)(3), and also interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in § 7 of the Act, 29 U.S.C.A. § 157, thereby violating § 8(a)(1), 29 U.S.C.A. § 158(a)(1). Respondents raise no jurisdictional question.

Respondent Swinerton and Walberg Company, herein called Swinerton, was general contractor for the installation of machinery in a processing plant being constructed for General Foods Company at San Leandro, California. Respondent Jabez Burns & Sons, Inc., herein called Burns, was a subcontractor for the delivery and installation of a portion of the machinery to be used in the plant. The machinery installation work involved was of a type with respect to which the Millwrights and Machinists have a long-standing jurisdictional dispute.

The Board's conclusions as to respondent Swinerton are supported by the following facts as disclosed by the evidence.

On October 29, 1949 Amos W. Doane, a Machinists' representative, talked to Arnold Thomas, respondent Swinerton's general superintendent, at the site of the project concerning the possibility of employing Machinists on the job. Thomas told Doane that since Swinerton was a member of the Associated General Contractors of America, herein called the A.G.C., all employees hired would have to receive clearance from the Millwrights. Upon being asked by Doane whether it would do any good to send some men out to be interviewed, Thomas repeated that in order for them to get jobs clearance from the Millwrights would first be necessary.

On or about October 25, 1949 Albert Nelson and A. C. Eakle separately came to Thomas and told him they were seeking work. Both men were at that time unemployed. Each man was questioned concerning his union affiliation and, upon answering that he was a member of the Machinists, was told he could not have a job. Nelson was told that Swinerton was a member of the A.G.C., and that A.G.C.'s con-

tractual relations with the Building Trades Department of the American Federation of Labor required that Swinerton use only Millwrights on the job. Eakle's request for a work application was denied by Thomas, who said that they were all tied up with the Millwrights.

On or about November 15, 1949, Emmet Callaway, Albert Stake, and a third man who is not involved in the present litigation came to Thomas at the job site and asked if respondent Swinerton was installing machinery. Upon an affirmative answer, the men asked Thomas whether there was any work for Machinists. Thomas responded with a "big wink," saying, "I'm wise to you guys," and that was the end of the conversation.

Respondents Swinerton and Burns were bound by a contract executed in 1948 by the A.G.C., of which Swinerton was a member, and the Bay Counties District Council of Carpenters, A.F.L., herein called the Carpenters' Council, of which the Millwrights were a member. However, Thomas was not correct in stating that this contract required affiliation with or clearance from the Millwrights as a condition to original employment. The pertinent clause of the contract stated: "There shall be no limitation of the employer as to whom he shall employ * * *."

The Board and the Trial Examiner further found that respondent Swinerton's subforeman, James Curry, a member of the Millwrights, notified the Millwrights when men were hired by him, and that no one was hired by respondent Swinerton for the installation project who to its knowledge was not a member of the Millwrights or one of the unions affiliated with it. Curry's testimony supports this finding.

The Board's conclusions as to respondent Burns are supported by the following facts as disclosed by the evidence.

On October 24, 1949 Doane spoke to respondent Burns' foreman, John Turk, and subforeman, Aliso Sabrowske, concerning the employment of Machinists on the installation job. Doane was told that Burns' labor contract required them to hire Millwrights with Millwright clearance.

On or about November 14, 1949 A. E. Witaschek, A. C. Gustaveson, R. W. Lord and J. M. Gilbert, all unemployed at the time, came to the job site and asked Sabrowske whether he was hiring any men. Sabrowske told them that he would be hiring in a couple of days. Upon being told in reply to his question that the men were not members of the Millwrights, Sabrowske said that they would have to clear through the Millwrights before they could be employed.

Lord and Gilbert thereupon visited the Millwrights' office and asked for working permits. They were told that the Millwrights did not give working permits and that they would have to take an examination and pay fifty dollars.

As in the case of respondent Swinerton, the Board and the Trial Examiner found that respondent Burns' subforeman, Sabrowske, a member of the Millwrights, reported to the Millwrights when men were hired by him, and that no one was hired for the job who to Burns' knowledge was not a member of the Millwrights or one of its affiliates. This finding is supported by Sabrowske's testimony.

■■ The primary question raised by respondents is whether the finding of the Board that they refused to consider the named claimants for employment because they were not affiliated with nor cleared by the Millwrights is supported by substantial evidence on the record considered as a whole. We have considered the entire record and find therein the requisite substantial support. Although respondents' officials denied that it was their practice to discriminate against applicants who were not Millwrights or affiliates thereof, the Trial Examiner discredited this testimony. Questions of credibility are generally for the Trial Examiner, who has the opportunity to observe the demeanor of the witnesses. N.L.R.B. v. State Center Warehouse & Cold Storage Co., 9 Cir., 1951, 193 F.2d 156; N.L.R.B. v. Dinion Coil Co., 2 Cir., 1952, 201 F.2d 484; Cf. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 492–497, 71 S.Ct. 456, 95 L.Ed. 456.

■■ An employer violates § 8(a) (3) and (1) of the Act if he requires membership in a labor organization as a condition precedent to employment. N.L.R.B. v. Cantrall, 9 Cir., 1953, 201 F.2d 853. The Board has contended that adoption of a system of union referral or clearance also violates the Act absent a "guarantee that the union does not discriminate against non-members in the issuance of referrals." We do not believe National Union of Marine Cooks and Stewards, 90 N.L.R.B. 1099 (1950) supports this view. Although it was there noted that the provisions of an applicable labor contract prohibited such discrimination, the Board did not indicate that a referral system was *per se* improper absent a "guarantee" of non-discrimination. Such a rule would in practical effect shift the burden of proof on the question of discrimination from the General Counsel of the Board to the respondent. The rule which we deem proper was recognized by the Board in Hunkin-Conkey Const. Co., 95 N.L.R.B. 433 (1951), where it was said an agreement that hiring of employees be done only through a particular union's offices does not violate the Act "absent evidence that the union unlawfully discriminated in supplying the company with personnel." 95 N.L.R.B. at 435. Cf. Del E. Webb Const. Co. v. N.L.R.B., 8 Cir., 1952, 196 F.2d 841, 845. In the instant case, however, the evidence discloses that the union in fact discriminated in favor of its members. Two of the men who had sought jobs from respondent Burns went to the Millwrights' office for work permits and were told they would have to take a test and pay fifty dollars. None of the men who applied to respondent Swinerton for jobs sought union clearance. Respondents strenuously urge that their cases be considered separately in all respects. To do so, however, would require us to ignore the reasonable inference that since the Millwrights discriminated as to employees hired by subcontractor Burns they would also discriminate as to employees hired by contractor Swinerton for the same installation project. The presumption of good faith is not applicable in such a situation.

■ Respondents have argued that the most important fact in the record is that no jobs were actually available at the time any of the named claimants visited the machinery installation project. While it is true that hiring took place at a later date, the job applicants were told that they could not obtain employment unless they received clearance from the Millwrights. Where such an illegal requirement has been imposed, and it is apparent from such discriminatory hiring policy that further application for employment would be futile, the job applicants need not go through the useless procedure of reapplying for employment at the later time when jobs are actually available in order to establish that they were victims of the discriminatory hiring policy. Arthur G. McKee & Co., 94 N.L.R.B. 399 (1951), enforced, 5 Cir., 1952, 196 F.2d 636; Daniel Hamm Drayage Co., 84 N.L.R.B. 458 (1949), enforced, 5 Cir., 1951, 185 F.2d 1020. In the instant case the existence of such a discriminatory hiring policy is amply supported by evidence of the statements made to the job applicants at the time they sought work at the installation project, as well as by the additional facts found by the Trial Examiner. We find no inconsistency in the conclusions of the Board in the instant case and its opinion in Consolidated Builders, Inc., 99 N.L.R.B. No. 135 (1952). In that decision the Board did note that no jobs were available at the time of application, but its conclusion that there had been no discrimination as to certain job applicants was bottomed upon the Trial Examiner's finding that the evidence *did not* show a discriminatory hiring policy. That finding was based at least in part upon the fact that "the respondent hired employees in the classification in question *without* requiring membership in or clearance from the Operating Engineers; that at times the respondent requisitioned men from the Operating Engineers who were *not* members of that union." Here, on the other hand, the Trial Examiner found that respondents did follow a discriminatory hiring policy, basing this in part on the fact that respondents did not to their knowledge hire men who were not members of the Millwrights or an affiliate. Cf. N.L.R.B. **v.** Cantrall, supra.

■ Respondent Swinerton emphasizes that Thomas was not doing the hiring of men for Swinerton and, further, that he was entirely mistaken as to the effect of the labor contract between the A.G.C. and the Carpenters' Council when he told job applicants that it required hiring Millwrights or men with Millwright clearance. We believe that Thomas, as general superintendent, had authority to discuss employment. Thomas was in a position to make policy and took it upon himself to speak for Swinerton. An employer charged with discrimination in regard to hire cannot hide behind an alleged misinterpretation of a labor contract which clearly states that the employer is to have complete freedom of employment. The significant fact is the existence of the discrimination.

■ We find no merit in respondents' contention that, granting the existence of a discriminatory hiring policy, it did not have the effect of denying employment to the specified job applicants. It is first suggested that the applications for work were not *bona fide*. The record does not support a claim of bad faith. All but one of the job applicants who testified were unemployed at the time they visited the site of the machinery installation project. One man was earning lower wages at a different trade. All of the applicants had considerable experience in machinery installation work. While it is not clear that the job applicants had reason to know that respondents were hiring Millwrights only, even so, knowledge of a hiring policy which is discriminatory and illegal does not characterize an application for work as being made in bad faith where all the evidence indicates that the men would have accepted work if it had been tendered. Respondents also suggest that the specified job applicants would not have been hired because the foremen followed a policy of hiring men they knew or with whom they had previously worked. We agree with the Board, however, that the evidence discloses that this preference on the part of the foremen was exercised within the closed circle of Millwrights' membership, and that since

516

there was a finding of a discriminatory hiring policy "it rested upon the tortfeasor to disentangle the consequences for which it was chargeable from those from which it was immune." N.L.R.B. v. Remington Rand, Inc., 2 Cir., 1938, 94 F.2d 862, 872, certiorari denied, 304 U.S. 576, 58 S.Ct. 1046, and Central Executive Council of Remington Rand Employees' Ass'n. v. N.L.R.B., 304 U.S. 585, 58 S.Ct. 1061, 82 L.Ed. 1546. This the respondents failed to do.

The final contention made by respondents is that prosecution of unfair labor practices charges initiated by the Machinists against employers and unions in the building and construction industry does not effectuate the policies of the Act. See § 10(c), Labor Management Relations Act of 1947, 29 U.S.C.A. § 160(c). It is asserted that the order of the Board should therefore be set aside, and that enforcement of the order would constitute a violation of the Fifth Amendment to the United States Constitution.

 Whether the Board should assume jurisdiction in respect to a particular industry is in the absence of abuse of discretion exclusively for the Board. N.L.R.B. v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F. 2d 141; Haleston Drug Stores, Inc. v. N.L.R.B., 9 Cir., 1951, 187 F.2d 418, certiorari denied, 372 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616. We do not believe that prosecution of unfair labor practices of the type herein involved is beyond the scope of the Board's discretion merely because the practices take place within the building and construction industry. The Board asserted jurisdiction over the industry as early as 1948. See N.L.R.B. v. Guy F. Atkinson, supra, 195 F.2d at page 143.

It has been recognized that application of the Labor Management Relations Act of 1947 to the building and construction industry has created special difficulties peculiar to that and analogous industries. See Sen. Rep. No. 1509, 82d Cong., 2d Sess. (1952); Hearings on S. 1973 before Subcommittee on Labor and Labor-Management Relations of the Committee on Labor and Public Welfare, 82d Cong., 1st Sess. (1951); The Impact of the Taft-Hartley

Act on the Building and Construction Industry, 60 Yale L.J. 673 (1951). One of the problems is the difficulty of conducting representation elections in suitable bargaining units within the building and construction industry, because of the migratory and intermittent nature of the employer-employee relationships. This problem is of course for Congress rather than the courts. We cannot say that prosecution of unfair labor practice charges within the industry will not effectuate the policies of the Act and will violate the Fifth Amendment solely because the Board has been unsuccessful in conducting representation elections. Even if such representation elections were held and particular unions certified on the basis of the election results, the practice of requiring, as a condition to original employment, membership in or clearance from a union which discriminates in favor of its own members would still violate the Act.

Let a decree be entered enforcing the Board's order.