## NATIONAL LABOR RELATIONS BOARD v. CANTRALL et al.

### No. 13356.

United States Court of Appeals Ninth Circuit.

Jan. 29, 1953.

Rehearing Denied Feb. 20, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel, Mark C. Curran and Charles Hackler, Washington, D. C., for petitioner.

Arthur Garrett, Los Angeles, Cal., James M. Nicoson, North Hollywood, Cal., for respondent.

Before MATHEWS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

After proceedings duly had pursuant to statutory authority, the National Labor Relations Board, hereafter referred to as the Board, ordered respondents J. R. Cantrall Company and H. C. Smith Company to cease and desist from certain unfair labor practices and to take certain affirmative action. The Board is asking us for enforcement.

The order is predicated upon a finding of the Board that respondents were engaged in commerce within the meaning of the Labor Management Relations Act of 1947, hereafter called the Act, and found a violation of § 8(a)(1) and (3) thereof, in that respondents had discriminated against members of the International Machinists Union, herein called Machinists, and in favor of members of the United Brotherhood of Carpenters and Joiners, herein called Millwrights.

Two questions are presented:

1. Was the finding of the Board that respondents' operation affected commerce within the meaning of the Act based on substantial evidence?

2. Is there substantial evidence in the record, considered as a whole, supporting the Board's finding that respondents, in violation of § 8(a)(1) and (3) of the Act, discriminated against applicants for employment who were members of the Machinists?

Respondent H. C. Smith Company, which we will refer to herein as the Smith Com-

pany, is engaged in the business of constructing large industrial plants. Its operations are largely confined to the Los Angeles, California, area. In 1949 its construction contracts in the aggregate amounted to $2,802,500. One of the contracts entered into by the Smith Company was with the Western Waxed Paper Company, a division of the Crown Zellerbach Corporation, to erect a new plant in Los Angeles. This contract involved the sum of $1,700,000. Smith Company also contracted with the Western Waxed Paper Company, hereafter called Western, to move machinery from its old plant to the new. Smith Company entered into what the parties have termed a "joint venture" with respondent J. R. Cantrall Company for the purpose of moving the machinery from the new to the old plant. This work was performed entirely within Los Angeles County, California.

Western manufactures industrial waxed paper at its plants in Los Angeles and San Leandro, California; also a plant at North Portland, Oregon. The Board found that its sales at the Los Angeles plant in 1949 amounted to over $1,000,000 and that about $70,000 of this amount was from out of state sales. Some of the supplies used by Western were received from Camas, Washington and West Linn, Oregon.

The Board's finding that the respondents' operations affect commerce within the meaning of the Act is bottomed on the interstate business engaged in by Western's Los Angeles plant. It found that any labor dispute arising during the construction or installation work would seriously hamper Western's ability to continue its interstate operations.

■■■ Respondents argue that there is no competent evidence in the record to sustain the Board's finding that Western is engaged in commerce. They maintain that the evidence relied on by the Board to sustain its finding in this respect is hearsay. Mr. George C. Wieman, General Manager of Western's Los Angeles plant testified. He produced a summary of Western's interstate transactions which, at his request, had been prepared by an assistant manager.

Mr. Wieman testified that he had no personal knowledge of the correctness of the statement, not having had an opportunity to check it. The General Manager testified that Western received supplies from Washington and Oregon. He knew this because of his official position with the firm. This was not hearsay. He had no positive knowledge of the exact amount of that interstate business. The Act does not confine the jurisdiction of the Board to any specific amount of commerce that must be transacted before it has jurisdiction. The summary presented by witness Wieman could properly be considered by the Board in determining whether this was such a case as would warrant its taking jurisdiction, and in no sense could it, in this respect, be bound by the hearsay evidence rule.

■ A second challenge to this finding is based upon the alleged absence of a showing that the assertion of jurisdiction by the Board effectuated the policies of the Act. It is argued that although the negotiated contract amount for the removal and installation of the machinery was $59,000, no showing was made that matters other than the removal and installation of the machinery was not included. The evidence is clear that the $59,000 was for the removal and installation of machinery; for instance, Mr. H. C. Smith, on cross-examination, testified as follows:

"Q. Mr. Cantrall said the job hadn't been audited yet. Could you tell us approximately what the value of the contract was for this moving and installation? A. * * * The contract amount was $59,000."

Thus the instant case was brought squarely within the standards established in Hollow Tree Lumber Company, 91 N.L. R.B. 635, a company engaged in commerce and contractors rendering service to it in an amount of more than $50,000.

We now approach the second question: Is there substantial evidence supporting the Board's finding that respondents, in violation of § 8(a)(3) and (1), discriminated against six applicants for employment?

■■ An employer violates § 8(a)(3) and (1) of the Act if he requires member-

ship in a labor organization as a condition for employment. N. L. R. B. v. Lloyd A. Fry Roofing Co., 9 Cir., 1951, 193 F.2d 324; International Union, United Mine Workers v. N. L. R. B., 1950, 87 U.S.App. D.C. 230, 184 F.2d 392, certiorari denied 340 U.S. 934, 71 S.Ct. 499, 95 L.Ed. 674; N. L. R. B. v. National Maritime Union of America, 2d Cir., 1949, 175 F.2d 686, certiorari denied 338 U.S. 954, 70 S.Ct. 492, 94 L. Ed. 589. From a consideration of the whole record we are left with the conviction that the Board's finding that respondents so discriminated in favor of the Millwrights, insofar as applications for employment by six members of the Machinists are concerned, is amply supported.

In substance the evidence discloses that one of the Cantrall brothers informed six applicants, members of the Machinists, that he was "going to have Millwrights on the job" and would not hire Machinists. He, in effect, stated that this position was necessary because the Smith Company, who was engaged in a "joint venture" with Cantrall Company in the machinery moving undertaking, had a contract with the building trades and that in the event he hired Machinists the carpenters in all probability would "tie up" the job. We credit this testimony because it seems under the circumstances, to have been the common sense view one anxious to get on with the job would take. One of the applicants, Inwall, testified that when he applied to respondent J. R. Cantrall for employment, he was informed that he (Inwall) could not be employed because he was a Machinist; that respondents' contract for the removal of the machinery was based on the A. G. C.

contract,[1] hence, to employ Inwall would result in a "walk off" by the carpenters.

The Machinists had representatives named Floyd E. Smith and Al Smith. Testimony by these representatives was to the effect that both J. R. Cantrall and Bryce Horn, Secretary-Treasurer of Smith Company, informed them that Smith Company had signed the A. G. C. contract and because thereof they would hire only Millwrights on the project.

The payroll records of respondents did not disclose the employment of a member of the Machinists. As many as 18 members of the Millwrights worked on the job at one time. This situation presents substantial evidence that discrimination was indulged in by respondents. See North Whittier Heights Citrus Ass'n v. N. L. R. B., 9 Cir., 109 F.2d 76, 78–79, certiorari denied 310 U.S. 632, 60 S.Ct. 1075, 84 L.Ed. 1402; N. L. R. B. v. Holtville Ice & Cold Storage Co., 9 Cir., 148 F.2d 168, 170.

J. R. Cantrall conceded that he "got" better men from the Machinists than the Millwrights. The Cantrall firm is shown to have had a large experience in work requiring special skills in operations dealing with machinery. If better workmen could be obtained from among the Machinists then the natural tendency of the contractors to complete the work with as much expedition and profit as possible would have asserted itself and dictated the hiring of Machinists in the absence of some compelling reason to proceed otherwise. We think a compelling reason existed, viz., fear of labor trouble "tying up the job."

The petition of the Board is granted and a decree will be entered enforcing its order.

1. The Master Labor Agreement between the Associate General Contractors (A. G.C.) and Building Contractors Association of California and the A.F.L. Building and Construction Trades Unions to which the Los Angeles Building and Construction Trades Council, among others, was a signatory.