### NATIONAL LABOR RELATIONS BOARD
### v.
### THOMAS RIGGING CO. et al.
### No. 13838.

United States Court of Appeals
Ninth Circuit.

March 10, 1954.

Rehearing Denied June 8, 1954.

---

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Owsley Vose, John Lawless, Attorneys, N.L.R.B., Washington, D. C., Robert V. Magor, Attorney, N.L.R.B., San Francisco, Cal., for petitioner.

Allan L. Sapiro, Douglas A. Nye, Todd & Todd, Henry C. Todd, San Francisco, Cal., for respondents.

Before HEALY, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

National Labor Relations Board, hereafter the Board, petitions for enforcement of its order requiring respondents Thomas Rigging Company, hereafter the Company, the Carpenters Union, Local No. 642, United Brotherhood of Carpenters & Joiners of America, A.F.L., hereafter the Millwrights, and Harry Cecil, its business agent, to cease and desist from certain unfair labor practices and to take specified affirmative action.

The Board found that the Company was engaged in commerce within the meaning of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., hereafter the Act, and found that the Company violated § 8(a) (1) and (3) thereof by refusing to hire four members of the International Association of Machinists, hereafter the Machinists, because of an alleged unlawful agreement between the Company and the Millwrights that no employee would be hired unless he were a member of the Millwrights. The Board also found that the Millwrights violated § 8(b)(1)(A) and § 8(b)(2) of the Act by being a party to the unlawful agreement and causing the Company to engage in the discriminatory conduct.

Three questions are presented: 1. Did the Board properly assert jurisdiction over the alleged unfair labor practice here involved? 2. Is there substantial evidence in the record considered as a whole to support the Board's finding that respondent company discriminated against members of the Machinists in violation of § 8(a)(1) and (3) of the Act? 3. Is there substantial evidence in the record considered as a whole to support the Board's finding that the Millwrights and its business agent Cecil caused the Company to discriminate against the Machinists in violation of § (8)(b)(2) and § 8(b)(1)(A) of the Act?

Thomas Rigging Company is a California Corporation engaged in hauling, rigging and installing machinery solely within the State of California. In August, 1951, the Company was engaged in the installation of machinery for the 81 mm. mortar shell line at the Rheem Manufacturing Company plant, hereafter Rheem, located at San Pablo, California. This work was performed pursuant to a subcontract with Christensen and Lyons, the general contractor for the plant's construction and installation of all machinery and equipment. The sole purpose of the plant's construction was to manufacture ordnance material for the armed services. The Company installed machinery valued at approximately $1,500,000 shipped to the Rheem plant from various points outside the State of California. During the period from August 1, 1951, until April 1, 1952, the Company received approximately $52,000 for services rendered at the Rheem plant. From November, 1951, through March, 1952, Rheem shipped approximately $650,000 worth of shell

components outside the State of California.

The Board exercised its jurisdiction here on two established grounds: First, respondent Company furnished services valued in excess of $50,000 per annum to Rheem, a company producing goods destined for out-of-state shipment valued in excess of $25,000 per annum. Hollow Tree Lumber Co., 91 N.L.R.B. 635. Second, respondent Company performed vital services to a company engaged in the production of goods for national defense. Westport Moving and Storage Co., 91 N.L.R.B. 902.

■ Respondent Company urges that it does not come within the Hollow Tree Lumber Company and the Westport Moving and Storage Company rules because it is a subcontractor and rendered services to a general contractor who in turn provided services to a company engaged in interstate commerce. The fact that the Company installed the machinery under a sub-contract with Christensen and Lyons, the general contractor, rather than under contract directly with Rheem, does not require a different result. We made it clear in N. L. R. B. v. Reed, 9 Cir. 1953, 206 F.2d 184, that the policy of the Act to prevent the burdening or obstruction of interstate commerce cannot be frustrated by the simple expedient of sub-contracting. It is clear that a work stoppage in the Company's project of installing machinery at the Rheem plant due to a labor dispute would impede the production of vitally needed defense material. The assertion of jurisdiction by the Board was proper.

■■ As to the second question: An employer violates § 8(a) (3) and (1) of the Act if he requires membership in a labor organization as a prerequisite for employment. N. L. R. B. v. Swinerton, 9 Cir. 1953, 202 F.2d 511; N. L. R. B. v. Cantrall, 9 Cir. 1953, 201 F.2d 853. The Board's finding that respondent Company refused to hire four applicants for employment because they were not members of the Millwrights is fully supported by the record.

The evidence discloses that each of the four applicants was informed by respondent Company's general foreman, Jack Burgman, that he could not obtain employment unless he received clearance from the Millwrights. Burgman told applicant Manuel Gonzalves that he could use him around the first of the week, but wanted to know to which union he belonged. On learning that he was a member of the Machinists Burgman told Gonzalves not to quote him but it would be necessary for Gonzalves to belong to the Millwrights union and that he should arrange to see respondent Cecil, the Millwrights' business agent, as a condition precedent to employment at the plant. Burgman told applicant Rex Renner that he would like to have him on the job but that it would be necessary for him to go down and get a clearance from Cecil. Renner stated that he doubted whether he could get a clearance because he was a Machinist, to which Burgman answered that there was a position open if he could get the clearance. Later Renner informed Burgman that Cecil refused to give him a clearance. Burgman then stated that his hands were tied and that he had to take the men that the Millwrights sent out on a clearance. Burgman informed applicant Leroy Young that there was no position open but that he expected more work during the following week and for Young to leave his name and address. Burgman told Young that if he got the job he would be required to get a clearance from Cecil at the Carpenters' Hall. Young asked why this was so and Burgman replied that the Company was "bound by the AGC [Associated General Contractors of America, Inc.] and any men coming down here hired on this job must be cleared through the Millwrights." Four days later when Young returned to the plant and renewed his request for work he was told that there were no openings but that he would be called when a job became available. Re-

spondent Company did not contact Young with an offer of a job. Applicant Phillip Glen applied for work. He was asked by Burgman whether he was a Machinist. Glen answered that he was and Burgman said that all his men were Millwrights and there were no jobs open. Burgman said he would call Glen if something developed. Glen was not called.

■ Respondent Company maintains that it hired the most qualified help without regard to union affiliation. It claims that because of the dangerous nature of the work it followed a practice of hiring only former employees or persons with whose work foreman Burgman was familiar. Although witnesses for the Company denied that it followed a discriminatory hiring policy, the trial examiner discredited this testimony. In doing so we think he properly exercised his function of determining the credibility of witnesses. N. L. R. B. v. Local 743, United Brotherhood of Carpenters & Joiners of America, 9 Cir. 1953, 202 F.2d 516; N. L. R. B. v. Dant, 9 Cir. 1953, 207 F.2d 165. The evidence establishes that the reason for the denial of employment to the four Machinists was because of their failure to obtain clearances from the Millwrights. Qualifications and previous employment by the Company played no part in it. Each of the applicants had had considerable experience in installing machinery. Burgman, in so many words, stated that they would be acceptable employees. During the period in question, the Company hired several men who had no previous employment with it. Nor does the evidence support the Company's final contention that a lack of available work justified the Company's refusal to hire the four machinists. Burgman's statements to both Gonzalves and Renner disclose that the Company wanted the two men and that there were jobs available for them. About the time that Gonzalves and Renner applied for employment, foreman Burgman was trying to locate three Millwrights whom he wished to hire. Two of these men were located and hired five days after Gonzalves and Renner had unsuccessfully sought employment. It is significant that eight men were hired for erection work after the four machinists requested employment—not one of the eight was a member of the Machinists. We think our statement in N. L. R. B. v. Swinerton, 9 Cir. 1953, 202 F.2d 511, 515, has application here:

" * * * the job applicants were told that they could not obtain employment unless they received clearance from the Millwrights. Where such an illegal requirement has been imposed, and it is apparent from such discriminatory hiring policy that further application for employment would be futile, the job applicants need not go through the useless procedure of reapplying for employment at the later time when jobs are actually available in order to establish that they were victims of the discriminatory hiring policy."

■■ The Board was not unanimous in its finding that respondent Millwrights and its business agent Cecil committed an unfair labor practice by being a party to the Company's discriminatory hiring arrangement and thereby causing the Company to refuse employment to four Machinists. There is grave doubt as to the sufficiency of the evidence to support such a finding. The evidence points unerringly to an unlawful hiring policy on the part of the Company. There is no direct evidence to connect the Millwrights or its business agent with the Company's unlawful conduct. The statements made by Burgman to the four Machinists were in no way binding upon respondents Cecil or Millwrights. The question then posed is, can the Millwrights be held legally liable on inferences alone? A majority of the Board considered its findings to be substantially supported by the testimony of Gonzalves and Renner as to the statements of Cecil

when they asked him for a clearance. As dissenting Board member Murdock points out, their version of what Cecil said reveals merely that Cecil refused to issue clearances to any person not a member of his union. This he could properly do. Nor did Cecil have an affirmative duty to disavow any unlawful understanding between the Millwrights and the Company merely because two Machinists came to him for a clearance. This failure to disavow looms large in the eyes of the Board as establishing an agreement to confine employment to members of the Millwrights, but we think it does not justify the significance given it. The burden of proof placed upon the general counsel was not satisfied by a mere showing that the existence of such an agreement was consistent with the Company's unilateral conduct. Many reasons may have motivated the Company in its discriminatory hiring policy and it is not improbable that it voluntarily chose to do so on a unilateral basis.

There is direct evidence that the Millwrights Local 642 was not a party to the Company's unfair labor practice. Witnesses Cecil and Burgman denied the existence of any arrangement with the Company and their testimony was supported by the fact that no member of respondent Millwrights Local 642 at any time did millwright work on the Rheem job. Not one of the men who worked on the job had a clearance from Local 642.

■ We do not lose sight of the fact that we should not substitute our judgment for that of the Board as to the credibility of witnesses or reasonable inferences drawn from the testimony, but we are functioning within our proper sphere when we say that mere speculation is not sufficient to uphold a finding of an unfair labor practice.

Decree will be entered enforcing the Board's order as to the respondent Company but not as to respondents Cecil and the Millwrights.