PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.*
MANUEL ACEVEDO ROSARIO, Respondent.

No. 40. Argued May 11, 1955.—Decided July 28, 1955.

**516**

*José Trías Monge, Attorney General, Aurelio Torres Braschi, Assistant Attorney General,* and *Ramón Acevedo Oliveras and Eduardo Álvarez de la Vega* for petitioner. *Ramón H. Vargas* for respondent.

PER CURIAM.

In a proceeding instituted at the instance of Local Union No. 65 of Barrio Campo Alegre of Hatillo, the Puerto Rico Labor Relations Board [1] held that respondent Manuel Acevedo Rosario had engaged in unfair labor practices in violation of § 8(1) (a) and (c) of the Labor Relations Act of Puerto Rico.[2] The violations of § 8(1) (a) consisted of

---

[1] Hereafter referred to merely as "the Board."

[2] The Labor Relations Act of Puerto Rico is No. 130 of May 8, 1945 (Sess. Laws, p. 406), as amended by Act No. 6 of March 7, 1946 (Sess. Laws, p. 18). Section 8(1) (a) and (c) provides:

"(1) It shall be an unfair labor practice for an employer acting individually or in concert with others:

"(a) To interfere with, restrain or exercise coercion upon, or to attempt to interfere with, restrain or exercise coercion upon his employees in the exercise of the rights guaranteed in Section 4 of this Act.

". . . . . . . ."

(1) having indicated to several laborers of his farm, through employee Juan Ramos García, on or about January 8, 1951, that unless they signed a letter repudiating the union he would not give them work on his farm, and compelling some of them to sign the letter; (2) having stated, on or about January 22, 1951, in the presence of several laborers of his farm, that he would not sign a stipulation renewing a collective bargaining agreement, since he would have nothing to do with unions; (3) having helped some of his laborers, through employee Reinaldo Martínez, to write a letter repudiating the union.

The violation of § 8(1) (c) consisted of refusing to employ 18 laborers for the purpose of discouraging membership in a labor organization.

As a consequence, on October 2, 1953, the Board entered an order against respondent requiring him to cease and desist from engaging in such unfair practices and to take a certain affirmative action which in the opinion of the Board accomplished the purposes of the statute. The Board now appeals to us urging that we enforce the order in question, on the authority of the provisions of § 9(2) (a) of our Labor Relations Act. The respondent appeared in the proceeding to oppose the petition and raises the questions which we proceed to discuss.

I

"The Board erred in concluding from the evidence presented that the acts of Juan Ramos (García) were imputable to respondent Manuel Acevedo Rosario."

---

"(c) To encourage, discourage or attempt to encourage or discourage membership in any labor organization by discrimination in regard to hiring, firing, or in connection with the tenure or other terms or conditions of employment, including a lockout; *Provided,* That nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization that has not been established, maintained or assisted by any action defined in this Act as an unfair labor practice, if such labor organization represents a majority of the employees in an appropriate unit with authority for collective bargaining."

██ The Board held the respondent answerable for certain statements made by Juan Ramos García, an employee of his, to a group of laborers who applied for work on the former's farm. Those statements were to the effect that the laborers would not be hired unless they signed a document repudiating the union. The Board based its decision on the fact that Juan Ramos García was a supervisory employee and that, therefore, his actions were imputable to the respondent, in the light of the provisions of § 2(2) of our Act.[3] *Cf.* 2 Labor Law Reporter 4024, § 3730.

Our Labor Relations Act contains no definition of the term *supervisor*. Nor have we found any in our authorities construing the term. However, the cases under the National Labor Relations Act—29 U.S.C.A. § 151 *et seq.*—shed enough light on the matter. Until the 1947 amendment, the Act contained no definition of the term *supervisor* either.[4] Prior to the amendment, the National Board ruled that supervisory employees are those who have the power to hire and discharge other employees, or to make recommendations to that effect, or to recommend wage increases, or those whose duties include apportioning work, enforcing discipline, or maintaining productivity. See Ludwig Teller, *Labor Disputes and Collective Bargaining*, 1940 ed., Vol. 2, § 350, pp. 933, 935–36, and cases therein cited. The nature of the connection with management and not with employees is the guiding principle which determines the *supervisory* nature of the employment. See *op. cit.*, Vol. 2, § 350, p. 936.

---

[3] Section 2(2) of Act No. 130, as amended, provides:

"The term 'employer' shall include executives, supervisors and any person who carries on activities of an executive nature directly or indirectly in the interest of an employer, but shall not include, (except for corporate instrumentalities of the Government of Puerto Rico as hereinafter defined) the Government or any political subdivision of the same; *Provided*, That it shall also include any individual, association or organization intervening in behalf of the employer in any labor dispute or collective bargaining."

[4] That Act was amended by the Labor-Management Relations Act of 1947. Act No. 101 of June 23, 1947, 80th Congress, 1st Sess., 61 Stat. 136.

In 1947, the Labor-Management Relations Act (Taft-Hartley Act) amended the National Labor Relations Act and incorporated the following definition of the term *supervisor:*

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C.A. § 152.

This provision has been construed by the courts to the effect that it is not necessary for the employee to have all the powers listed in that provision to be considered as a *supervisory* employee. Only one of them is necessary. *N.L.R.B.* v. *Budd Mfg. Co.*, 169 F. 2d 571, *cert. den.*, 335 U. S. 908; *Ohio Power Co.* v. *N.L.R.B.*, 176 F. 2d 385; *N.L.R.B.* v. *Beaver Meadow Creamery*, 215 F. 2d 247, 251. The National Board, however, has recognized that the granting of supervisory powers to an ordinary employee, to be exercised only occasionally, does not make him a supervisory employee. *N.L.R.B.* v. *Leland-Gifford Co.*, 200 F. 2d 620, 625; *N.L.R.B.* v. *Quincy Steel Cast. Co.*, 200 F. 2d 293, 296. In view of this, and the fact that the powers enumerated in the definition above referred to are of such nature as to identify the employee having them with the management and not with the ordinary employees, we can conclude that the amendment in question did not alter the situation greatly.

In the case at bar, there is evidence that Juan Ramos García selected the personnel on respondent's farm, assigned the work to be performed, directed it and, in general, performed the duties of an overseer. There is no question that his work identified him with the employer's interests and not with those of ordinary employees. For that reason he should be considered as a supervisory employee. We must

therefore conclude that the Board did not err in holding the respondent answerable for the acts of Ramos García.

■ By express provision of law, the findings of fact made by the Board are final and conclusive provided, as is the case here, they are supported by the evidence. Under such circumstances, this Court is without authority to disturb them. Section 9(2) (a) and (b) of the Puerto Rico Labor Relations Act; *Labor Relations Board* v. *Simmons Int. Ltd.*, *ante*, p. 360; *Rivera* v. *Labor Relations Board*, 70 P.R.R. 5, 8; *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320, 328.

II

"The evidence of the Board does not show that a violation of § 8(1) (c) of the Act has been committed."

■■ The respondent adduces three grounds in support of his contention. We will discuss them separately as was done by the parties in their briefs but altering the order so as to discuss in the last instance the first one, which refers to laborers Blas González and Alfonso de León, to wit:

"2. The Board failed to prove that complainants, as a matter of fact, had applied to the respondent for work."

In our opinion, respondent is not correct. The testimony believed by the Board, and supported by the evidence, reveals that the laborers, against whom respondent discriminated, worked for him up to November 1950, when they were suspended for lack of work. They were then told to return in January, 1951, when the work on the farm would be resumed. Later they were informed that the work would be resumed on January 8, 1951. On that day they went personally with other laborers to respondent's farm to apply for work. While they were assembled in the presence of respondent's overseer, Juan Ramos García, waiting to be selected for work, they were informed by the latter that there was work only for those who would sign a certain document repudiating the union. In view of this alter-

native, some of the laborers signed the document in question and were hired. Those concerned here, who did not agree with the condition imposed by Ramos García, refused to accept it and withdrew from the place.[5] In our judgment, and in view of these circumstances, it can be concluded that the laborers, in appearing before overseer Juan Ramos García and assembling while waiting to be selected for work, did in fact apply for work. *Olin Industries* v. *N.L.R.B.*, 191 F. 2d 613, 617; 192 F. 2d 799. Evidently, this was the impression gathered by Juan Ramos García himself and that is why he advised them that there was no work for those who refused to sign the document. Indeed, it was not necessary for the laborers to apply for work individually. A mass application is sufficient. *Olin Industries* v. *N.L.R.B.*, *supra;* 2 Labor Law Reporter 4328, § 4035.44.

In view of the above, we need not consider the Board's contention that, under the circumstances of this case, it was not necessary for the laborers to apply for work since such application would have been useless in view of the statements made by the overseer that only those who would sign the document repudiating the union would be hired. *Cf. Bennett-Hubbard Candy Co.*, 11 N.L.R.B. 1090, 1099; *Register Publishing Co., Ltd.*, 44 N.L.R.B. 834, 848; *Eagle-Picher Mining & Smelting Co.* v. *N.L.R.B.*, 119 F. 2d 903, 914.

"3. The Board failed to prove that there was work available for complainants."

██ Respondent bases his contention on the fact that on the day of the incriminating acts there was work available on respondent's farm for only "6 or 10" laborers, his conclusion being that there was no work available for the 18 laborers allegedly discriminated against. As we shall see, this is not a valid defense for respondent. In the case of *Akin Products Co.*, 99 N.L.R.B. 1270, it is stated at p. 1275 as follows:

---

[5] On January 15, 1951, the laborers went back to respondent's farm to apply for work and the incident above recounted was repeated.

". . . . . Where, as here, it appears affirmatively that certain employees were rejected because of their union activity, it can be no defense to the complaint that the Employer could not hire both the women it did select and the ones it rejected. As the Board has long held, an Employer may not utilize an economic reduction in its over-all employment as a means for discriminating against those employees who were union members or otherwise active on behalf of the Union. . . . ."

The case of *Swinerton & Walberg Co.*, 94 N.L.R.B. 1079,[6] goes even farther, stating as follows at p. 1080:

". . . . . As the Board has recently held in a like situation,. however, the Act was first violated by the Respondents when the complainants initially applied and were told that membership in the Millwrights Union was a condition of employment, even though no jobs were then available. By imposing such an unlawful condition, the complainants were discriminatorily denied an opportunity to be considered for employment by the Respondents. This method of discrimination is of a continuing nature and quite obviously precluded their actual employment when jobs became available shortly thereafter. In these circumstances, where further applications for employment would. have been futile, it is settled that the complainants were not. required to continue making the useless gesture of reapplying in order to establish that they were victims of the Respondents" discriminatory hiring policy. However, under our back-pay order for these complainants, no actual back pay would start. to accrue until work became available and, as pointed out by the Trial Examiner, no complainant who was unable or unwilling to accept employment at such time would be entitled to back pay."

See, also, *Arthur G. McKee & Co.*, 94 N.L.R.B. 399.

On the other hand, the United States Court of Appeals. for the Third Circuit in *N.L.R.B.* v. *Textile Machine Works,. Inc.*, 214 F. 2d 929, at p. 932 states that discrimination is. an unfair practice where another person is employed in place of the applicant discriminated against. It is further stated

---

[6] See *N.L.R.B.* v. *Swinerton*, 202 F. 2d 511, enforcing the order of the. Board in the above-cited case.

at p. 934: "Since the unfair labor practice charged was discriminatory refusal to hire, the General Counsel also had to show that Textile hired others to fill vacant jobs for which the former employees had applied and were qualified."

Obviously, the latter case lays down a more limited rule than the *Swinerton* and *McKee* cases, *supra*. However, even under the theory stated in that case, we believe that the Board's ruling that the respondent was engaged on January 8, 1951, in the unfair practice charged, is duly supported by the evidence. It shows that on that day there was work available on respondent's farms, and that in fact several applicants were hired and started to work. It further shows that the laborers allegedly discriminated against were qualified for the work for which the other laborers were hired on the day of the occurrences. There is nothing in that case that would be contrary to the *Akin* case, *supra*, and that would require enough vacant jobs to hire all the applicants as an essential condition to the discriminatory refusal to hire. We therefore conclude that the fact that there were vacancies only to hire some of them does not relieve respondent from responsibility.

"1. The Board failed altogether to prove that complainants Blas González and Alfonso de León were laborers of the respondent."

 The respondent contends that, since there is no evidence that Blas González and Alfonso de León had worked previously or had any connection with him, the Board erred in ruling that there was discriminatory refusal to hire them, on the ground that they were present among the applicants and that they did not work on his farms in 1951. Respondent further contends that the record contains no evidence establishing that these laborers were present at the place of the occurrences for the purpose of applying for employment. His argument is based on a false premise. The transcript of the evidence presented before the examining officer reveals

that the Board had before it evidence that the laborers in question, like the others discriminated against, had been employed by respondent up to November 1950, when they were laid off. This appears from respondent's own statement.[7] Without doubt, under such circumstances the Board could infer from the presence of those laborers—among those who were seeking employment—that the latter went there for the same purpose as their fellow workers. Their statement was not indispensable to establish this fact. Moreover, it is clearly inferred from the statement of the other workers discriminated against that all the laborers mentioned in the complaint were at the place of the occurrences for the purpose of seeking employment on respondent's farms. See *Olin Industries* v. *N.L.R.B.*, *supra*. In view of what has been stated above, and the fact that respondent himself admitted not having hired those laborers during 1951, we must conclude that the Board did not err in ruling that discrimination against them had taken place.

 It is well to point out that we are in agreement with the contention of the attorney for the Board that, in order to establish a violation of § 8 (1) (c) for discriminatory refusal to hire, it is not necessary to prove that the laborer allegedly discriminated against had been previously hired by the employer. See *National Labor Rel. Bd.* v. *Waumbec Mills Inc.*, 114 F. 2d 226; *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U. S. 177; *N.L.R.B.* v. *Textile Machine Works, Inc.*, 214 F. 2d 929; 2 Labor Law Reporter 4315, § 4020. However, in the instant case the evidence was relevant, as has been seen, in establishing the purpose for which the laborers in question had appeared personally on the day of the occurrences at respondent's farm.

---

[7] The Board, in expressly adopting the findings of fact made by the examining officer, adopted and subscribed to the latter's conclusion that all the laborers involved in the complaint were ordinary workers of respondent's farm.

## III

"The Board was moved by bias in applying different tests of credibility to its witnesses and to the witnesses for respondent."

The question raised by respondent in this assignment is clearly frivolous and does not call for discussion. It suffices to say that the weighing of the evidence is an exclusive function of the Board and that, as stated above, this Court is without power to interfere with the latter's determination in the exercise of that function. See § 9 (2) (*a*) and (*b*) of our Act; *Labor Relations Board* v. *Simmons Int., Ltd., supra;* and *Labor Board* v. *Waterman S.S. Co.,* 309 U.S. 206.

Judgment will be rendered enforcing the order of the Board.