277 F.2d 56
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL 392, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES
OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO, Respondent.
 No. 12799.
 United States Court of Appeals Seventh Circuit.
 Feb. 29, 1960.
 
 Thomas J. McDermott, Associate Gen. Counsel, Richard Scupi, Atty., Stuart Rothman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Atty., N.L.R.B., Washington, D.C., for petitioner.
 Jonas B. Katz, Cincinnati, Ohio, Brown & Gettler, Cincinnati, Ohio, of counsel, for respondent.
 
 
 1
 Before DUFFY and CASTLE, Circuit Judges, and GRUBB, District Judge.
 
 
 2
 GRUBB, District Judge.
 
 
 3
 This is a petition by the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. 151 et seq., for enforcement of its Order issued December 19, 1958, against respondent, Local 392, based on findings of violations of Section 8(b)(2) and (1)(A) of the Act, 29 U.S.C.A. 158(b)(2) and (1)(A).
 
 
 4
 During an eighteen month shutdown of the Lawrenceburg, Indiana, plant of Schenley Distillers, Inc., (hereinafter called the 'Company'), prior to December 20, 1955, maintenance pipe fitting work at its plant was performed by employees of a local contractor, Lawrenceburg Heating and Plumbing Company. In September, 1955, the Company began preparations for reopening the plant and agreed to employ seven of the men who had previously been working there for the local contractor.
 
 
 5
 Negotiations between the Company and Local 392 with respect to a collective bargaining agreement covering its future pipe fitters also began in September, 1955. During the course of these negotiations, in October and December of 1955, the Company informed Local 392 of its intention to hire the Lawrenceburg Heating and Plumbing Company employees. Local 392 objected to the hiring of one of the men, Morton Baker, because of his nonmembership in Local 392.
 
 
 6
 On December 19, 1955, the Company informed Baker that he was to begin work on December 21, 1955. On December 20, 1955, the Company and Local 392 executed a collective bargaining agreement, and the Local again stated to the Company that it could not hire Baker. Thereupon, a Company official gave instructions that Baker was not to begin work as planned.
 
 
 7
 During January and February of 1956, Local 392 continued its objections to the Company's wish to employ Baker. On January 30th Baker filed the charges in this case. On March 1st Local 392 informed the Company that it would not oppose Baker's employment although it would not approve it. One week later Baker began work at the plant.
 
 
 8
 Spokesmen of Local 392, in opposing the employment of Baker, stated that the Company could not hire Baker because he was not a member of Local 392 although he belonged to a sister local; that the Company could not hire Baker 'under that contract'; and that Local 392 'didn't care who they hired as long as they hired members' of the Local. On withdrawing its opposition, Local 392 informed the Company that it (the Company) knew its rights.
 
 
 9
 The terms of the collective bargaining agreement between Local 392 and the Company in effect prior to the shutdown do not appear in the record. During the shutdown no agreement was in effect. The contract executed on December 20, 1955, has no provision conditioning employment on Union approval. Prior to the shutdown in June, 1954, the Company generally requested any needed pipe fitters from Local 392.
 
 
 10
 Local 392 is resisting the Board's Order only insofar as said Order requires it and the Company jointly to make Baker whole.[1]
 
 
 11
 Local 392 contends that there can be no finding of 'cause or attempt to cause an employer to discriminate against an employee * * *' as proscribed in Section 8(b)(1) of the Act[2] unless one of the following facts be established: A prearrangement or agreement between the Company and the Local with respect to discriminatory hiring; threats and coercive conduct by the Local; or potential friction and retaliation by the Local because of the Company's refusal to accede to Union wishes.
 
 
 12
 Local 392 further contends that its failure to disabuse the Company of its unilateral misconception as to the existence of an agreement requiring Union approval as a hiring condition cannot be taken to establish the existence of such an illegal arrangement or agreement under the holding ofNational Labor Relations Bd. v. Thomas Rigging Co., 9 Cir., 1954, 211 F.2d 153, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685.
 
 
 13
 In reversing the Trial Examiner on the finding as to the Local's violation, the Board did not pass on the question of the existence of such an illegal agreement but, nevertheless, based its finding that Local 392 caused the Company's illegal conduct on the facts that the Local's objections to the hiring of Baker was made in the context of negotiations respecting a future collective bargaining agreement and that 'both the Company and the Union proceeded under the impression, albeit erroneous, that the latter had a legitimate interest in the selection of employees for employment.'
 
 
 14
 The controversy here concerns the question whether or not the essentially undisputed activities of Local 392 suffice to constitute the 'cause' of the Company's discriminatory denial of employment to Baker from December 21, 1955 to March 8, 1956. In addition to the facts relied on by the Board it may be noted that it appears from the record that the Company was willing at all times to employ Baker and held the position open for him; that it repeatedly sought the Local's approval for hiring Baker; and that it did hire Baker shortly after Union objections thereto were withdrawn.
 
 
 15
 Furthermore, nothing in the record indicates that the Company acted in pursuance of motives other than that of not going contrary to the objections of Local 392. If in fact there was no established practice or agreement conditioning hiring on Union approval, the Company's misconception as to the existence of such a practice or agreement was induced and abetted by the conduct of Local 392. In effect, a misconception as to these facts can exert as much pressure in bringing about the Company's illegal conduct as could be exerted by the practice or agreement had they existed in fact. The reasonableness or unreasonableness of the Company's conduct cannot be considered as a defense to Local 392 where the latter by its activities induced and took advantage of such conduct for its own purposes.
 
 
 16
 Congress has entrusted the enforcement and administration of the National Labor Relations Act to the Board. National Labor Rel. Bd. v. Newspaper & Mail Del. Union, 3 Cir., 1957, 246 F.2d 62. The courts of appeal have limited power of review in controversies where the Board has exercised jurisdiction. S. H. Camp & Co. v. National Labor Relations Board, 6 Cir., 1947, 160 F.2d 519, 522. The court cannot reject inferences reasonably drawn by the Board and based on substantial evidence in the record. See Victor Mfg. & Gasket Co. v. National Labor Relations Bd., 7 Cir., 1949,174 F.2d 867.
 
 
 17
 The Board's finding that Local 392 caused the Company's discriminatory refusal to hire Baker is based on a reasonable inference drawn from proved facts and circumstances in this case. The petition for enforcement of the Board's Order is granted.
 
 
 
 [1]
 The Company has not appealed from that portion of the Board's Order based on a finding of its violation of Section 8(a)(1) and (3) of the Act
 
 
 [2]
 '158. Unfair labor practices
 '(b) It shall be an unfair labor practice for a labor organization or its agents--
 '(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: * * *
 '(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section * * *'