297 F.2d 920
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MIAMI VALLEY CARPENTERS' DISTRICT COUNCIL OF DAYTON, OHIO,
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA, AFL-CIO, Respondent.
 No. 14576.
 United States Court of Appeals Sixth Circuit.
 Jan. 22, 1962.
 
 Leo N. McGuire, Washington, D.C., Stuart Rothman, General Counsel, Dominick L. Manoli, Asso. General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorney, N.L.R.B., Washington, D.C., on brief, for petitioner.
 Robert A. Wilson, Cincinnati, Ohio, for respondent.
 Before MILLER, Chief Judge, CECIL, Circuit Judge, and DARR, Senior District Judge.
 PER CURIAM.
 
 
 1
 Petitioner, National Labor Relations Board, seeks enforcement of its order of November 1, 1960, ordering respondent Union to cease and desist from causing or attempting to cause B. G. Danis Company, Inc., to discriminate against its employees in violation of Section 8(a)(3) of the Act, 29 U.S.C.A. 158, and directing it to make whole employee Cabble H. Chester for any loss of pay he may have suffered by reason of the discrimination against him. Both the Trial Examiner and the Board found the respondent Union had engaged in an unfair labor practice within the meaning of Section 8(b)(2) and Section 8(b)(1)(A) of the Act by causing the discriminatory discharge of Chester by the Danis Company. The facts as found by the Trial Examiner and the Board are as follows.
 
 
 2
 Chester, a carpenter, was hired as a new employee by the Danis Company for temporary work starting on Monday, June 15, 1959. Except for the termination of his employment on June 18, he would have continued working through June 23, when the job was completed. Upon starting to work Chester informed Markland, the company's superintendent, and Barger, the company's foreman on the job, that he had had trouble with his local Union in Cincinnati, by reason of which it had refused to take his dues upon his tendering the Union a check for the same. Markland permitted Chester to go to work but suggested to Barger that 'you had better call the Union.' Barger notified the Union by phone that there was a man on the job whose dues were in arrears. On Thursday, June 18, respondent's business agent, Weber, went to the job, talked to Chester and told him he would have to pay his dues by the next morning if he wanted to work the next day. He told Barger and Himes, the Union stewart, that if Chester's dues were not paid up by the next day Chester was not to go to work. Weber later told Himes in Markland's presence that if Chester's dues were not paid up the following morning Himes should call Weber. Shortly before quitting time Chester met Superintendent Markland and told him he was quitting in order to avoid causing any trouble. They discussed how and when Chester was to be paid. After work Superintendent Markland met Chester at his car as Chester was getting ready to leave the property. Chester thanked Markland for the job, told him he was sorry to give him any trouble, and added that he thought it best to get off the job because he did not want to cause any more trouble. According to Chester, Markland said in substance that if he had known Chester did not have a paid-up working card he certainly would not have hired him.
 
 
 3
 Under the circumstances the respondent Union contends that it did not cause the Danis Company to terminate Chester's employment, but that Chester decided to quit his employment rather than to return to work the next day.
 
 
 4
 The Trial Examiner and the Board concluded that the proximate cause of Chester's leaving the job was Weber's instructions to him, Barger and Himes, and but for Weber's statements, Chester would have continued working on the job through the following June 23; that not only did Markland and Barger fail to protect Chester's job, but they both were instrumental in calling Chester's delinquency to the attention of the respondent Union; that Chester was justified in leaving the job and not returning to work, knowing that neither the foreman nor the superintendent would protect his job; and that respondent Union, through its agent Weber, engaged in action which was tantamount to a request to discriminate with respect to the terms of Chester's employment, which action was reasonably calculated to bring about that result and constituted a violation of Section 8(b)(2) of the Act.
 
 
 5
 We are of the opinion that the findings of the Board are supported by substantial evidence on the record considered as a whole, and that its conclusion based thereon that the action of the respondent Union constituted a violation of Section 8(b)(2) of the Act is not erroneous. N.L.R.B. v. Oklahoma City General Drivers, etc., 235 F.2d 105, 107-108, C.A. 10th; N.L.R.B. v. Local 420, etc., 239 F.2d 327, 331, C.A. 3rd; N.L.R.B. v. Cement Masons Local No. 555, etc., 225 F.2d 168, 171-172, C.A. 9th; N.L.R.B. v. Jarka Corp. of Philadelphia, 198 F.2d 618, 621, C.A.3rd; N.L.R.B. v. Swinerton, 202 F.2d 511, 515, C.A. 9th, cert. denied, 346 U.S. 814, 74 S.Ct. 24, 98 L.Ed. 341.
 
 
 6
 Enforcement of the order is granted.