**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 485, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Respondent.**

No. 87, Docket 71–1185.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1971.

Decided Jan. 12, 1972.

Michael H. Levin, Atty., Washington, D.C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Atty., Washington, D.C., on the brief), for petitioner.

Everett E. Lewis, New York City (Vladeck, Elias, Vladeck & Lewis, Zachary Wellman, New York City, on the brief), for respondent.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In April 1968, the National Labor Relations Board found that Local 485, International Union of Electrical, Radio and Machine Workers, AFL–CIO, violated section 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C. § 158(b) (1) (A), by unlawfully refusing to process a wrongful discharge grievance of union member Opreas Barclay against

his employer, Automotive Plating Corp. (the Company). 170 N.L.R.B. 1234 (1968).[1] The Board issued an order which, in part, required Local 485 to take the grievance to arbitration, if necessary, but the Board did not seek enforcement of that order. In June 1970, the Board found that the Local had failed to comply with the original order and issued a supplemental order which, with one member dissenting, required the Local to:

> Make Opreas Barclay whole for any loss of earnings he may have suffered as a result of his discharge . . . from the date Barclay requested the Union to challenge the propriety of that discharge . . . until such time as the Union fulfills its obligation to Barclay of fair representation, or Barclay obtains substantially equivalent employment, whichever is sooner.

183 N.L.R.B. No. 131 (1970). In a petition filed in February 1971, the Board seeks enforcement of both these orders. We enforce the original order, but decline to enforce the supplemental order for reasons set forth below.

## I

The parties agree on some of the facts in this bitterly contested case. On August 16, 1965, Barclay was summarily discharged from his job as a grinder and polisher in the Company. The discharge was based on Barclay's alleged insubordination when he refused a temporary transfer to another job. At that time, Barclay had been in the Company's employ for over seven years and was the most senior worker in the shop. Although a written grievance was immediately filed on Barclay's behalf by the Shop Committee, Local 485 did not take

Barclay's grievance to arbitration, as it had a right to do under its collective bargaining agreement. Shortly before Barclay's discharge, there had been a volatile dispute in the plant over compulsory overtime. The Company, apparently dissatisfied with the lack of sufficient volunteers to meet its overtime needs, posted a notice purportedly requiring some employees to work a 56-hour week rather than the 40-hour week provided in the contract. That same day, the Shop Committee chairman, Rupert Campbell, called Wallace Eisenberg, the Local's business manager, to complain about the Company's action and a meeting between Eisenberg and the men was held. The meeting was, in modern jargon, an exercise in participatory democracy; positions on both sides of the overtime issue were taken with conviction and in colorful language, to say the least. Eisenberg was criticized severely for asserting that the Company had the right to demand overtime if the voluntary arrangements were inadequate. One of his most vocal critics was Opreas Barclay.[2]

The remaining factual issues were hotly disputed and the evidence—primarily testimonial—conflicts markedly in critical respects. The trial examiner found that Eisenberg threatened to "get rid of" Barclay "in [my] own way" following the union meeting, and that when Barclay was fired soon thereafter for the alleged insubordination, Eisenberg when so advised said "he's the instigator, isn't he." The examiner also found that Eisenberg failed to discuss the discharge with Company representatives, although during this period he did successfully take up another discharge case with the Company. Generally discredit-

---

1. Barclay filed the charges in December 1965. The complaint was issued in May 1966, and amended that August. The trial examiner held hearings in December 1966 and issued a report in June 1967. The complaint, as amended, did not allege an unfair labor practice against the Company, and the Company was not a party to these proceedings.

2. Eisenberg testified that "I don't recall Mr. Barclay saying anything" at the meeting. Local 485 apparently concedes, however, that Barclay "heatedly expressed" his opposition. Respondent's brief at 11–12.

ing the Local's witnesses,[3] the examiner concluded that the Local's decision not to take Barclay's grievance to arbitration, which as a practical matter was under Eisenberg's control as business manager, was motivated by Eisenberg's hostility toward Barclay.

The Board adopted the trial examiner's findings, with some modifications. The Board did not rely on one of the examiner's findings that Barclay was a pawn in a feud between Eisenberg and the Shop Committee, but rather found an adequate basis for a section 8(b) (1) (A) violation in Eisenberg's threatening response to Barclay's criticism and in Eisenberg's failure to discuss Barclay's discharge with Company representatives. The Board concluded (170 N.L.R.B. at 1234):

> Since Barclay's conduct at the union meeting constituted activity protected under Section 7 of the Act [29 U.S.C. § 157], the Union's retaliation through Eisenberg's failure to process Barclay's grievance, was violative of Section 8(b) (1) (A).

█ Local 485 argues at length that there is no substantial evidence to support the factual determinations of the Board and its trial examiner and that the credibility findings are "[e]ven more egregious."[4] We have examined the record with care, and although we might not have reached the same conclusion as the Board did had the matter come before us *de novo*, we find the Board's "choice between two fairly conflicting views" to be supported by substantial evidence on the record as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). See NLRB v. Marsellus Vault & Sales, Inc., 431 F.2d 933, 937 (2d Cir. 1970); Bedding, Curtain & Drapery Workers Union, Local 140 v. NLRB, 390 F.2d 495, 500 (2d Cir.), cert. denied, 392 U.S. 905, 88 S.Ct. 2056, 20 L.Ed.2d 1363 (1968). Because resolution of the factual issues in this case turns mainly on credibility, we have necessarily relied in great measure on the trial examiner's credibility findings, particularly on the key issues whether Eisenberg threatened Barclay with retaliation and whether the Local took the trouble even to discuss Barclay's case with management at a meeting in August. See note 3 *supra*. To the extent the credibility findings are buttressed by documentary evidence, they do not appear unreasonable.[5] To the extent demeanor was influential, the testimony ultimately credited was not "hopelessly incredible." NLRB v. Warrensburg Board & Paper Corp., 340 F.2d 920, 922 (2d Cir. 1965), quoting NLRB v. Dinion Coil Co., 201 F.2d 484, 490 (2d Cir. 1952). This, then, is the common situation of a case that could have gone either way on the facts. Its only unusual aspect is that the full scale attack on the Board as "sloppy and most inept" in its investigations and on the examiner as "one-sided" and hostile comes from a union rather than from an employer. Nonetheless, applying the normal standard of review, we conclude that we are required to affirm the Board's findings. Moreover, we do not believe that the Local was denied a fair hearing, as it claims.

---

3. The collective testimony of Eisenberg, Anthony Nicora, the Local's business agent, and Stuart Sobel, Company treasurer, was to the effect that no threats were made concerning Barclay, that Barclay's grievance was discussed at a meeting with the Company in August, and that the decision not to demand arbitration was based on a good faith evaluation of the chances for success and the desirability of withdrawing Barclay's griev- ance to get favorable action from the Company on another grievance.

4. Respondent's brief at 17.

5. For example, in a letter to Barclay dated August 31, 1965, Eisenberg recounted the Local's efforts on Barclay's behalf but did not mention an August meeting with management. The omission was used by the examiner in discrediting Eisenberg's version of what took place at that August meeting. See 170 N.L.R.B. at 1242–43.

## II

The Board found that Barclay's criticism of the Local's position on the overtime issue was protected activity under section 7, 29 U.S.C. § 157, and that the Local's refusal to process his wrongful discharge grievance because of the criticism was an attempt to "restrain or coerce . . . employees in the exercise of rights guaranteed in section [7]. . . ." 29 U.S.C. § 158(b) (1) (A). We agree with the Board's conclusion that this was an unfair labor practice, see NLRB v. Teamsters Local 282, 412 F.2d 334 (2d Cir. 1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 682, 24 L.Ed.2d 682 (1970).[6] The more difficult issues arise out of the remedy proposed by the Board—a full back pay order enforceable against the Local.[7]

The problem of protecting an individual employee against arbitrary collective bargaining decisions of his union without destroying the union's effectiveness as a bargaining agent is not an easy one. When an employee claims, as Barclay does here, that a company violated a collective bargaining agreement and that his union thereafter failed to represent him properly in pressing his grievance, the rights of the employee, the union and the company are all intertwined. Moreover, there are three possible tribunals to resolve aspects of the dispute—a court, the Board or an arbitration panel—each having practical and legal limitations on its power. Under the developing law, Barclay had a number of choices open to him. He could have brought a lawsuit against his employer directly "under § 301 [29 U.S.C. § 185] for breach of a promise embedded in the collective bargaining agreement that was intended to confer a benefit upon the individual." Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 298–299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971). Or Barclay could have sued the Local alone for breach of its duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Or he could have joined the Company and the Local in a suit against both, although the essence of the claim against each would differ. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed. 2d 370 (1964); Steinman v. Spector Freight System, Inc., 441 F.2d 599 (2d Cir. 1971). Such actions may be brought notwithstanding otherwise enforceable limitations on employee remedies.[8] See Vaca v. Sipes, *supra,* 386 U.S. at 185–186, 195–198, 87 S.Ct. 903, 17 L.Ed.2d 842. See also Professor Lewis's perceptive article, Fair Representation in Grievance Administration: Vaca v. Sipes, 1967 Sup.Ct.Rev. 81, 87–88 (1967). In short, despite the Supreme Court's continuing concern over maintaining the Board's exclusive powers in this delicate area of labor relations, see *Lockridge, supra,* 403 U.S. at 285–291, 91 S.Ct. 1909, 29 L.Ed.2d 473, it is now firmly established that Barclay could have gone directly to court rather than to the Board in order to obtain relief. He chose, however, to seek the Board's help, and we do not mean to suggest that doing so was either impermissible or unwise. The Board had ju-

---

6. Since the Local's action was calculated retaliation against Barclay for exercise of a right clearly protected by section 7 of the Act (the right to criticize union leadership), we are not forced to reconsider this court's controversial disposition of the Board's broader theory in Miranda Fuel Co., 140 N.L.R.B. 181 (1962), enforcement denied, 326 F.2d 172 (2d Cir. 1963), that any arbitrary or invidious action which violates a union's duty of fair representation is prohibited by section 8(b) (1) (A).

7. We note that the Company offered on January 21, 1969 to reinstate Barclay without back pay.

8. In this case, the collective bargaining agreement gave only the Local, "within three weeks" after the end of the grievance procedure, "the right to demand arbitration." The agreement also provided that "No employee . . . shall have the right to institute any action based upon this Agreement for wrongful discharge or because of any breach of this Agreement. . . . "

risdiction over Barclay's claim that the Local's failure to represent him was an unfair labor practice, see note 6 *supra*, and a case can be made that the Board is the preferable tribunal. See H. Wellington, Labor and the Legal Process 180–84 (1968). In any event, Barclay did what he had a right to do, and the central issue before us is the permissible scope of the Board's remedial powers.

■ The Board's initial order in this case required the Local to cease and desist from violating section 8(b) (1) (A), to post certain notices and to take Barclay's grievance to arbitration if necessary. This order was well within the Board's power and we will enforce it in its entirety. In doing so, we note explicitly that if a section 301 suit against the employer is required in order to obtain arbitration, as the record indicates is probable, it will be deemed necessary for the purpose of complying with the order.[9]

■ There are great difficulties, however, with the supplemental order which holds the Local liable for all the back pay due Barclay. To be sure, the Board has broad discretion in fashioning back pay remedies. See NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 348, 73 S.Ct. 287, 97 L.Ed. 377 (1954); NLRB v. United Marine Div. Local 333, NMU, 417 F.2d 865, 867–868 (2d Cir. 1969), cert. denied, 397 U.S. 1008, 90 S.Ct. 1237, 25 L.Ed.2d 421 (1970). But it appears that in the present situation the Board's discretion has been sharply limited by the explicit language of Vaca v. Sipes, *supra*, 386 U.S. at 196–198, 87 S. Ct. at 920, 17 L.Ed.2d 842:

A more difficult question is, what portion of the employee's damages

may be charged to the union: in particular, may an award against a union include, as it did here, damages attributable solely to the employer's breach of contract? We think not. . . .

The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

See also Czosek v. O'Mara, 397 U.S. 25, 29, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Although the Court in *Vaca* focused on a union's potential liability in a section 301 suit for breach of its duty of fair representation, the Court's direction would apply with equal force in Board proceedings against a union under section 8(b) (1) (A), particularly since the Board's powers have long been characterized as remedial rather than punitive. See Carpenters Local 60 v. NLRB, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961); Republic Steel Corp. v. NLRB, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940); Jaffe, The Judicial Enforcement of Administrative Orders, 76 Harv.L.Rev. 865, 875 (1963). It may be said, however, that *Vaca* does not prevent a court (and therefore the Board) from apportioning liability and that back pay in this case—except for the portion accruing during the relatively short time it would have taken to hold an arbitration—would properly be considered "damage caused by the fault" of the union. Although there is language in *Vaca* indicating that the bulk of the back pay should not properly be attrib-

---

9. The possibility of inadequate or languid prosecution of the § 301 suit or of the arbitration proceeding itself could have been avoided by requiring the Local to furnish Barclay with reasonable legal fees, as dissenting member McCulloch suggested, and to allow him to have his own counsel at the arbitration proceeding, see Steinman v. Spector Freight System, Inc., 441 F.2d 599, 601 (2d Cir. 1971). But the Board has not so ordered and, accordingly, we will be forced to deal with any inadequate representation claims in the context of contempt proceedings.

uted to the Local,[10] later expression of the rule in *Czosek* [11] leaves us less certain.[12] In any event, whatever the proper rule may be for apportionment, since the Board's order holds the Local liable for all the back pay due Barclay, it is improper under *Vaca,* and for reasons indicated below we leave any apportionment problems to another time.

Apart from the language in *Vaca,* there is another fundamental difficulty with the supplemental order. No tribunal—neither court, arbitration panel nor the Board—has decided that Barclay was discharged in violation of the collective bargaining agreement. Although the trial examiner found that Barclay was "unlawfully discharged," [13] the Board concluded only that the discharge "was open to serious, unresolved question, and . . . [that] the Employer plainly disregarded clear cut provisions of its contract. . . ." [14] In this court, the Board argues that Barclay had a persuasive grievance.[15] The Local answers that Barclay was insubordinate in refusing to accept a transfer and did not follow "the principle of 'obey now, grieve later'." [16] We express no opinion on the issue. The point is that if Barclay's discharge was valid, neither the Local nor the Company would be liable for any back pay. Until some tribunal determines the validity of the discharge, any assessment of back pay might well be regarded as speculative and punitive. See *Jaffe, supra* at 875. Even if the Board had ruled upon the validity of the discharge, the issue would remain whether its order is an attempt to remedy the Company's breach of contract and therefore beyond the Board's power.[17] There is at least a substantial question whether the reason-

10. In the majority opinion, joined in by Justices Douglas, Clark, Brennan and Stewart, 386 U.S. at 197–198, 87 S.Ct. at 920, 17 L.Ed.2d 842, Justice White stated:

> Though the union has violated a statutory duty in failing to press the grievance, it is the employer's unrelated breach of contract which triggered the controversy and which caused this portion of the employee's damages. . . .
> . . . In this case, even if the Union had breached its duty, *all or almost all of* Owens' damages would still be attributable to his allegedly wrongful discharge by Swift. . . . [Emphasis added.]

In the concurring opinion of Justice Fortas, joined in by Chief Justice Warren and Justice Harlan, 386 U.S. at 201, 87 S.Ct. at 922, 17 L.Ed.2d 842:

> The Court holds—and I think correctly if the issue is to be reached—that the union could not be required to pay damages measured by the breach of the employment contract, because it was not the union but the employer that breached the contract.

11. 397 U.S. at 29, 90 S.Ct. at 773, 25 L.Ed.2d 21:

> Assuming a wrongful discharge by the employer independent of any discriminatory conduct by the union and a subsequent discriminatory refusal by the union to process grievances based on the discharge, damages against the union for loss of employment are un-recoverable except to the extent that its refusal to handle the grievances added to the difficulty and expense of collecting from the employer.

12. See also Richardson v. Communications Workers of America, 443 F.2d 974, 981–984 (8th Cir. 1971) ; De Arroyo v. Sindicato de Trabajadores Packing, AFL–CIO, 425 F.2d 281 (1st Cir.), cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

13. 170 N.L.R.B. at 1248.

14. 183 N.L.R.B. No. 131.

15. The Board points out that the discharge was summarily effectuated despite the contract's directive that "Should the Employer desire to discharge an employee, he shall first seek to secure the consent of the Union thereto. . . ." The agreement also provided that only the least senior man in the department was subject to temporary transfer. Moreover, Barclay allegedly had a long-standing oral agreement with management to the effect that his relief work in the buffing department was on a voluntary basis only.

16. Respondent's brief at 18.

17. Cf. Vaca v. Sipes, 386 U.S. at 187–188, 87 S.Ct. at 915, 17 L.Ed.2d 842:

> Moreover, the Board would be compelled in many cases either to remedy injuries arising out of a breach of contract, *a task which Congress has not assigned*

ing of NLRB v. C & C Plywood, 385 U. S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967), and NLRB v. Acme Industrial Co., 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed. 2d 495 (1967), applies where the Board seeks to "interpret and give effect to the terms of a collective bargaining contract" only for the purpose of invoking a back pay remedy. See NLRB v. Strong, 393 U.S. 357, 361, 89 S.Ct. 541, 21 L. Ed.2d 546 (1967); cf. NLRB v. Huttig Sash & Door Co., 377 F.2d 964, 969–970 (8th Cir. 1967) (Blackmun, J.); NLRB v. George E. Light Boat Storage, Inc., 373 F.2d 762, 768–769 (5th Cir. 1967).

Because the Board's supplemental order in its present form is improper and because enforcement of its first order may be sufficient to remedy the unfair labor practice, we decline to enforce the supplemental order. We realize that because of the Local's inaction, a section 301 suit to compel arbitration may be barred by the statute of limitations.[18] But we are not sure that the applicable statute has run, see Abrams v. Carrier Corp., 434 F.2d 1234, 1251–1253 n. 15 (2d Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) or that countervailing federal interests may not have tolled it. Cf. Atkins v. Schmutz Mfg. Co., 435 F.2d 527 (4th Cir. 1970), cert. denied, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971), noted in 71 Colum.L.Rev. 865, 875–880 (1971); *Lewis, supra* at 92 n. 20.

In any event, we think it premature to deal with these and other major problems discussed above, some of which have not been fully briefed or argued by the parties. Should there be an arbitration, a decision for the Company would end the matter and the policies of the National Labor Relations Act would have been carried out. The presumably disinterested tribunal selected in the union contract would have reviewed Barclay's discharge on the merits, and he is entitled to no more. On the other hand, a decision for Barclay would raise such issues for the arbitrator as whether Barclay is entitled to reinstatement with back pay, what the period for back pay should be [19] and whether the Company should bear all of that liability. Should the arbitrator find the Company liable for only part of the back pay period, the Board might then wish to amend its supplemental order and seek to hold the Local liable for all or part of the rest. Although we do not hold that the Board has power to do so, its position would be stronger than it is now, since by hypothesis the arbitrator would already have found that the discharge was improper and might have clarified what a proper "apportionment" of back pay liability would be under *Vaca*.[20]

The Board's original order of April 9, 1968 is enforced. Enforcement of the supplemental order of June 29, 1970 is denied.

to *it*, or to leave the individual employee without remedy for the union's wrong. [Emphasis added; footnote omitted.]

18. We note that had the Board immediately petitioned for enforcement of its first order, this problem would have been diminished and this court's contempt powers would have been available some time ago.

19. See note 7 *supra.*

20. In *Vaca*, 386 U.S. at 196, 87 S.Ct. at 920, 17 L.Ed.2d 842, the Court pointed out:

In some cases, for example, at least part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union.