**SAN FRANCISCO WEB PRESSMEN AND PLATEMAKERS' UNION NO. 4, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Michael Tenorio and Gil Fowler, Charging Parties.**

**Nos. 83–7701, 83–7822.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1985.

Decided July 7, 1986.

Original Partial Concurrence and Partial Dissent Withdrawn and Replaced July 22, 1986.

Laurence Gold, Brian C. Walsh, Garry, Dreyfus & McTernan, San Jose, Cal., for petitioner.

Andrew F. Tranovich, NLRB, Washington, D.C., for respondent.

William G. Lewis, San Francisco, Cal., for charging parties.

Before: TANG and FERGUSON, Circuit Judges, and GRAY,* District Judge.

FERGUSON, Circuit Judge:

San Francisco Web Pressmen and Platemakers' Union No. 4 ("Union") petitions for review of the National Labor Relations Board ("Board") Second Supplemental Decision and Order dated October 24, 1984; the Board applies for enforcement. That decision orders the Union to arbitrate a wrongful termination grievance, permits the employees involved to hire outside counsel at the union's expense, and orders the Union to pay back wages if the grievance cannot be arbitrated. We grant enforcement of those parts of the order compelling arbitration and permitting outside counsel, and deny enforcement of that part of the order making the Union potentially liable for backpay.

I.

Michael Tenorio and Gil Fowler ("Employees"), members of the Union since 1977, became involved in a barroom fight in August 1978 with another Union member. On learning of the incident, the Union Executive Board contacted the Employees and requested that they explain their conduct. The Employees considered the incident of no concern to the Union, and on August 23, 1978, told Paul Trimble, a member of the Executive Board, over the telephone that they would not appear. They visited Trimble at work that same day and, in a loud voice, Fowler asked to speak with him. Trimble agreed, but Fowler replied that he wanted to see him outside. Fowler asked when Trimble got off work, and promised to see Trimble then. Trimble felt threatened and asked security personnel to accompany him to his bus stop after work. Trimble reported the story to the Employer, who discharged Tenorio and Fowler the following day.[1]

The Union filed a grievance on the Employees' behalf. Union investigators interviewed Trimble and two eyewitnesses, but neither Tenorio nor Fowler. On August 29, 1978, the Joint Standing Committee, composed of two Employer and two Union representatives, upheld the discharges for cause. The Union declined to arbitrate the grievance.

On September 1, 1978, the Employees filed unfair labor practice charges with the National Labor Relations Board against the Employer and the Union. The General Counsel to the Board determined that the Employees were discharged "for cause," and issued no complaint against the Employer. He did, however, issue a complaint against the Union, charging it with breach of its duty of fair representation in processing Employees' grievance. After a hearing, an administrative law judge (ALJ) found a breach by the Union. The Board reversed on April 25, 1980, but this court reversed the Board and remanded, holding that the Union had breached its duty by failing to interview the Employees. *Tenorio*, 680 F.2d at 602.

On remand the Board issued a Supplemental Decision and Order. The Union timely petitioned this court for review of

---

* Honorable William P. Gray, Senior United States District Judge for the Central District of California, sitting by designation.

1. The events surrounding the Employees' discharge and the Union's failure to process their grievance properly are recounted in *Tenorio v. NLRB*, 680 F.2d 598, 600–01 (9th Cir.1982).

the decision. The Board applied for enforcement. The Board issued a Second Supplemental Decision clarifying a portion of its prior order.[2]

The Board ordered, in part, that the Union:

(1) Request the Employer to reinstate Tenorio and Fowler, and pursue the remaining stages of the grievance procedure, including arbitration, if necessary.

(2) Permit Employees to retain their own counsel during the grievance process and pay reasonable legal fees of such representation.

(3) Pay Employees back wages from the date they first requested the Union to redress their grievance until they obtained substantially equivalent employment (less net earnings, plus interest) in the event that it is not possible to finally process the Employees' grievance.

Thereafter, the Board amended its application for enforcement, and the Union amended its petition for review.

## II.

The Union challenges the propriety of the arbitration order, the permission to hire outside counsel at the Union's expense, and the backpay order. We discuss each issue in turn.

■ First, the Union contends that the Board improperly ordered the Union to pursue the grievance if the Employer refuses to reinstate the Employees. The Union argues that it effectively complied with the

order by seeking reinstatement and arbitration after the ALJ's decision, and by referring the Employees to the Employer for hire.[3] We disagree. These efforts do not constitute full compliance with the order. For example, the Union has not attempted to compel arbitration through a section 301 suit.[4]

Second, the Union challenges the Board's order permitting the Employees to hire outside counsel for the remainder of the grievance procedure at the Union's expense. The Union argues that arbitration is impossible and therefore this portion of the order is "meaningless." We disagree.

■ A union has no duty to process a frivolous grievance. *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1275 (9th Cir.1983). However, a union may be liable for the expense of outside representation if it has failed to process a nonfrivolous grievance fairly. *Id.* at 1275–76.[5] Though the court in *Tenorio* made no explicit assessment of the merits of the Employees' grievance, we read *Tenorio* to hold that the grievance was not frivolous, because it found a breach of duty by the Union. *Tenorio*, 680 F.2d at 602. Therefore, the assessment of attorney's fees is within the Board's broad discretion. *Dutrisac*, 749 at 1275–76.

■ Third, the Union argues, and we agree, that because no tribunal has yet concluded that the Employees were discharged in breach of their contract, the Employees are not entitled to a backpay award. We hold that the Employees must show both a wrongful discharge by the

---

**2.** The first supplemental decision ordered the Union to pay back wages in the event that the grievance could not be processed "due to considerations of timeliness." The second supplemental decision more fully explained the rationale of the backpay award and ordered the Union to pay back wages if the grievance was prohibited "for any procedural or substantive reason."

**3.** Tenorio was eventually hired through the referral.

**4.** We recognize that the four-year statute of limitations may bar a section 301 suit. However,

federal interests such as the parties' attempt to resolve the case through the Board, *see Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033–37 (9th Cir.1983), may toll the statute, or the statute may be equitably tolled under California law, *id.* at 1033.

**5.** Exclusive representation by the Union is the rule, and privately retained counsel the exception. *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1484–85 (9th Cir.1985). Given the Union's breach of duty, the Board's order is within the exception.

Employer and a breach of duty by the Union to collect backpay from the Union.[6]

█ The Board has broad discretion in fashioning a backpay remedy, and the remedy should stand unless it is an attempt to achieve ends not within the policies of the NLRA. *NLRB v. International Association of Bridge, Structural and Ornamental Iron Workers Local 433*, 600 F.2d 770, 777–78 (9th Cir.1979) (citing *J.H. Rutter-Rex Manufacturing Co.*, 396 U.S. 258, 263, 90 SCt. 417, 420, 24 L.Ed.2d 405 (1969)), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). However, we enforce an order only if "the Board correctly applied the law." *Clear Pine Mouldings, Inc. v. NLRB*, 632 F.2d 721, 724 (9th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981). We find that the Board incorrectly applied the law.

█ An employer and a union are jointly and proportionately liable for backpay when the employer has caused damage by wrongfully discharging the employee and the union has increased that damage by breaching its duty of fair representation. *E.g., Bowen v. United States Postal Service*, 459 U.S. 212, 223, 103 S.Ct. 588, 595, 74 L.Ed.2d 402 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 566, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).[7] The employer and union each are liable for the portion of damages that it caused: the employer for back pay from the date of the wrongful termination to the date the employee would have been reinstated had the union not breached its duty, and the union for backpay thereafter. *Id.*

"[Breach of contract and fair representation] claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [the employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.' " ... The employee may, if he chooses, sue one defendant and not the other, but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983) (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981) (citation omitted)).[8]

█ The Employees argue that the Supreme Court cases require an employee to show both wrongful discharge and breach of duty to prove employer liability, not union liability. They argue that they therefore should not have to show a wrongful discharge for the Union to be liable. We disagree. The language and reasoning of the cases refer to union liability for backpay as well. In addition, our circuits, other circuits, and the Board have required a showing that the employer breached the collective bargaining agreement before holding the union liable for backpay.[9]

In *NLRB v. Pacific Coast Utilities Service, Inc.*, 638 F.2d 73 (9th Cir.1980), we enforced a Board order granting backpay against both the employer and the union when substantial evidence in the record supported the Board's findings of both

---

**6.** Tenorio and Fowler have established that the Union breached its duty of fair representation. *Tenorio*, 680 F.2d at 601–02.

**7.** The Supreme Court cases involve section 301 suits. This case involves an unfair labor practice charge brought before the Board under section 10(c) of the NLRA. However, we may use the same analysis for fair representation claims brought before either tribunal. *NLRB v. Eldorado Manufacturing Corp.*, 660 F.2d 1207, 1215 (7th Cir.1981); *NLRB v. Local 485, International Union of Electrical Radio and Machine Workers*, 454 F.2d 17, 22 (2d Cir.1972).

**8.** Section 301 suits are hybrid actions against the employer and the union, and normally an employee sues both. However, the reasoning and language of *DelCostello* apply to each defendant.

**9.** The dissent erroneously assumed that, to establish the wrongfulness of a discharge, an employee must litigate directly against the employer. We impose no such requirement. An employee may use traditional discovery tools to obtain information from the employer. Thus, the Employees need not preserve their rights to sue the Employer, as the dissent states.

wrongful discharge and breach of duty of fair representation. We treated the wrongful discharge finding as a prerequisite to the employer and union's backpay liability: "Given the determination that discharge was wrongful, it follows that the failure of the union to represent the employee was damaging to him and a contributing factor to his loss of pay." *Id.* at 74 (citing *Newport News Shipbuilding & Dry Dock Co.,* 236 NLRB No. 197 (1978)).

Other circuits have followed this rule. *See United Steelworkers of America v. NLRB,* 692 F.2d 1052 (7th Cir.1982) (denying enforcement of Board order awarding backpay against union for breach of duty because grievance not shown to have merit); *NLRB v. Eldorado Manufacturing Corp.,* 660 F.2d 1207, 1215 (7th Cir.1981) (Board should impose backpay liability against employer and union "only if the discharges were contrary to the collective bargaining contract and if the Union breached its duty of fair representation"); *NLRB v. Local 485, International Union of Electrical, Radio and Machine Workers,* 454 F.2d 17, 23 (2d Cir.1972) (denying enforcement of Board order awarding backpay against union for breach of duty because grievance not shown to have merit).[10]

The Board itself has used this rule. In *Glass Bottle Blowers Association,* 240 NLRB 324 (1979), the Board affirmed the ALJ's order to process a wrongful discharge grievance and to reimburse the employees for outside counsel at those proceedings, but rejected a backpay request. *Id.* at 325. The Board reasoned that, without a resolution of the underlying grievance against the employer, such an award would be punitive. *Id.*[11]

### III.

We grant enforcement of that part of the Board's order compelling the Union to pursue the Employees' grievance and to hire outside counsel at the Union's expense. We deny enforcement of that part of the order awarding backpay in the event arbitration is impossible.

TANG, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority that the Board's arbitration order and the Board's order permitting the Employees to hire outside counsel at the Union's expense may stand. I respectfully dissent from the majority's conclusion that Union backpay liability is in each and every instance contingent upon a tribunal's determination of wrongful discharge by the employer.

Although the general rule is that the Board shall not hold unions liable for backpay without a finding by a tribunal (court, Board, or arbitration panel) that the discharge by the employer breached the collective bargaining agreement, *see, e.g., United Steelworkers of America v. NLRB,* 692 F.2d 1052, 1058 (7th Cir.1982); *Glass Bottled Blowers Association,* 240 NLRB 324, 325 (1979), the Board here ordered Union backpay liability in the event that arbitration is found to be time-barred. *Beverly Manor Convalescent Center,* 229 NLRB 692, 696 (1977). I believe this result is correct. Since we had already held the Union to have breached its duty of fair representation, *Tenorio v. NLRB,* 680 F.2d 598, 601 (9th Cir.1982), the Board reasoned

---

10. The courts rely on various reasons to support this conclusion. In *United Steelworkers of America,* 692 F.2d at 1058, and *Local 485,* 454 F.2d at 23, they concluded that a lack of a judicial or administrative finding of wrongful discharge rendered backpay speculative and punitive, and therefore outside the scope of the Board's remedial powers. Additionally, the court in *United Steelworkers of America,* 692 F.2d at 1058, observed that if the grievance is not meritorious, the employee would be rewarded for misconduct.

11. A useful analogy with a requirement to show both a breach of duty and a harm caused or increased by that breach is attorney malpractice liability. *See, e.g., Weitzel v. Oil Chemical and Atomic Workers International Union, Local 1–5,* 667 F.2d 785, 787 (9th Cir.1982) ("[T]he standard in a malpractice suit should not be whether the NLRB attorney exercised ordinary skill and care, but whether the case could have been won....") A client is not entitled to recover from the attorney just by showing a breach of duty alone.

that as the wrongdoer, the Union should not be rewarded for its misconduct. The Board thus held that for the purposes of backpay liability, the grievance would be resolved in favor of the injured employee.[1]

If arbitration is found to be time-barred, the majority would leave the Employees without relief since no alternate tribunal would be available to adjudicate the wrongful discharge claim. A § 301 suit against the Union, the Employer, or both would be unavailable because the four-year statute of limitations would have long expired.

Thus, the practical result of the majority approach is to force employees filing an unfair labor practice complaint with the Board (alleging breach of duty of fair representation) to file simultaneously a § 301 suit against the union, the employer, or both *simply to preserve their right* to damages against the Union. Such a requirement is not only unfair, but also flies in the face of national labor relations policy. Congress has specified, and the Supreme Court has recognized, that a dispute resolution method agreed upon by the parties—in this case arbitration—is the desirable method for settlement of grievance disputes. § 203(d), 61 Stat. 154, 29 U.S.C. § 173(d); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). *See also Clayton v. Automobile Workers*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981) (national labor policy encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements).

If arbitration is found to be time-barred, the Board is faced with a situation where it may be impossible to know with certainty what would have happened in the absence of the Union's unfair labor practice. These uncertainties are the "direct products of Respondent Union's unlawful action," *King Soopers, Inc.*, 222 NLRB 1011, 1020 (1976), and the Board has consistently held that when a Union breaches its duty of fair representation under Section 8(b)(1)(A) of the Act by failing to process a grievance, "it is proper to resolve the question [concerning the validity of the grievance] in favor of the injured employee and not the wrongdoer." *Beverly Manor Convalescent Center*, 229 NLRB at 696. *See also Henry J. Kaiser Company*, 259 NLRB 1 (1981); *Electrical Workers IBEW 2088 (Federal Electric Corp.)*, 218 NLRB 396 (1975).

The Board's view is in accord with well-established equitable principles. Indeed, the Supreme Court has made clear that "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946).[2] In short, the Board, in seeking to uphold the public interest and restore the status quo, is entitled to place the burden of any uncertainty on the Union as the wrongdoer in this case.

Faced with such a situation, the Board correctly resolved the uncertainty in favor of the injured employees and not the wrongdoers, and presumed that Tenorio and Fowler's grievance, if fully and fairly processed, would have been found meritorious and that they would have been reinstated with backpay.[3] In this instance I

1. Ordinarily, the Board probably cannot pass on the merits of the discharge since its order could be construed as an attempt to remedy the Employer's breach of contract. Such an attempt would very likely overstep the Board's authority to act. *See Vaca v. Sipes*, 386 U.S. 171, 187–88 (1967); *NLRB v. Electrical Workers IUE Local 485*, 454 F.2d 17, 23–24 (1972).

2. See also *Leeds & Northrup Co. v. NLRB*, 391 F.2d 874, 880 (3d Cir.1968) ("the Board can hardly be said to be effectuating policies beyond the purposes of the Act by resolving the doubt

against the party who violated the Act."); *NLRB v. Swinerton*, 202 F.2d 511, 516 (9th Cir.1953).

3. In *Steelworkers v. NLRB*, 692 F.2d 1052 (7th Cir.1982), the court failed to enforce the Board's finding that the union violated its duty of fair representation. Thus, the court technically did not need to face the question of the proper remedy for such a violation. However, the court there further stated that the Board's proposed backpay remedy could not be enforced because there was no finding the discriminatee's grievance had merit, and thus it could not be

believe the Board's order was correct and for the foregoing reasons I would affirm that order.

said that the union had caused any damage since there was no finding of breach of contract. On the other hand, the court conceded that in the event the arbitration order is found to be time-barred, the Board may pass on the merits of the contract claim to the extent that it effects the union's liability. *Id.* at 1057.

In *NLRB v. Electrical Workers IUE Local 485,* 454 F.2d 17, 22 (2d Cir.1972), the court enforced the Board's initial order which, like the order in this case, required the offending union to "take [the discriminatee's] grievance to arbitration if necessary." The court explicitly noted that "if a section 301 suit against the employer is required in order to obtain arbitration ... it will be deemed necessary for the purpose of complying with the order" (footnote omitted). The court,

however, found it "premature to deal with" the "problem" addressed by the Board in this case— the respondent's liability for backpay if it is finally unable to obtain arbitration of the discriminatees' grievance. *Id.* at 24. The court further noted that "[u]ntil some tribunal determines the validity of the [discriminatees] discharge, any assessment of back pay might well be regarded as speculative and punitive." *Id.* at 23.

However, since the Board did reach a final determination that the Union breached its duty of fair representation, I find nothing speculative or inconsistent with the above-discussed principles of equity, in assigning the Union with backpay liability should it be unable now to pursue the remaining stages of the grievance.