929 F.2d 125
 118 Lab.Cas. P 10,696
 LOCAL 305, NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN,
MESSENGERS AND GROUP LEADERS DIVISION OF the
LABORERS' INTERNATIONAL UNION OF NORTH
AMERICA, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
LOCAL 305, NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN,
MESSENGERS AND GROUP LEADERS DIVISION OF the
LABORERS' INTERNATIONAL UNION OF NORTH
AMERICA, AFL-CIO, Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Petitioner.
 Nos. 90-1021, 90-1039.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 7, 1991.
Decided Feb. 20, 1991.
Amended by Order March 5, 1991.
Amended by Order March 28, 1991.
 
 Thamer Eugene Temple, III, argued (Jack W. Burtch, Jr., McSweeney, Burtch & Crump, on brief), Richmond, Va., for petitioner.
 William Allen Baudler, argued (Jerry M. Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Charles Donnelly, Supervisory Atty., Marion Griffin, Office of Gen. Counsel, N.L.R.B., on brief), Washington, D.C., for respondent.
 Before SPROUSE and CHAPMAN, Circuit Judges, and COPENHAVER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Local 305 of the National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union of North America (Local 305) petitions for review of an order of the National Labor Relations Board (NLRB) finding the union guilty of an unfair labor practice and directing it to pay a non-union member of its bargaining unit damages arising out of its failure to process three of his grievances. The Board in a cross-application seeks enforcement.
 
 
 2
 * Al-Amin S. AsSalaam commenced working for the United States Postal Service (USPS) on November 24, 1984. On January 4, 1985, AsSalaam, a mail handler, injured his abdomen and elbows while performing his job. He was placed on limited duty at the request of his family physician and remained so until October 29, 1985. However, after six months on limited duty, the USPS Medical Unit scheduled AsSalaam for a fitness-for-duty examination as authorized by the Employee & Labor Relations Manual (Employee Manual) covering postal workers. On October 1, AsSalaam reported to the medical unit with a duty status slip from his family physician and again received a limited duty assignment. After AsSalaam was examined by an independent physician on October 9, the examining physician concluded that AsSalaam was experiencing "very minimal ill-defined tenderness" from the January injury and saw "no reason to restrict any of [AsSalaam's] duties." Nevertheless, on October 28, AsSalaam returned to the Medical Unit with a duty status slip signed by his family physician with a check mark next to the phrase "Fit for Light/Limited Duty." In spite of that, the Medical Unit found AsSalaam fit for regular duty and he was reassigned to regular duty effective the following day. On that day, AsSalaam was refused leave to speak with the union steward. He later reported to the Medical Unit that he had again strained his arms performing his assigned task, causing the pain in his elbows to worsen and leaving him unable to perform the regular duties assigned to him. The unit, however, again certified him fit for regular duty. After advising his supervisor of his injury and inability to continue his shift, AsSalaam completed a sick leave form and left work early. He was placed on leave without pay status until he could "return with substantiation from his doctor of his illness or injury."
 
 
 3
 AsSalaam did not return to work until November 13, and then only to leave early and not return to work again until November 22. On that day, AsSalaam submitted a disability certificate prepared by a surgeon referred by his family physician to a medical unit nurse. Relying on the fitness-for-duty examination evaluation of October 9, however, the nurse insisted he return to regular duty. AsSalaam again left work early after his protest of this decision was denied by the USPS injury compensation specialist who advised him to resume regular duty or go home and await a hearing to resolve the disagreement of the physicians.
 
 
 4
 The Employees Manual provisions[1] establish that pending resolution of the conflict by the Department of Labor, the postal service may not alter an employee's duty status based on a medical officer's questioning of an attending physician's report on the employee's ability to perform his job. If the results of the fitness-for-duty examination conflict with the findings of the attending physician, the matter, along with justification for the USPS position, is referred by the control office/control point supervisor to Deputy Commissioner of the Office of Workers' Compensation Programs for resolution. It is not clear from the record whether such referral occurred, but it is clear that no hearing was ever held.
 
 
 5
 On November 25, AsSalaam met with a union steward to inquire about filing grievances charging the postal service with refusing to release him to see a steward on October 29; returning him to regular duty on October 29 contrary to his physician's recommendation; placing him on AWOL status on October 29 and refusing to place him on limited duty on November 22. The steward allegedly informed AsSalaam that when his grievance reached the advanced stages of the process, and the union's regional personnel discovered he was not a union member his grievance would be placed "on the bottom of the stack" and that it was problematic whether funds for legal representation or medical opinion would be authorized. In January 1986, AsSalaam furnished some documents in response to a request by the president of Local 305 but no grievances were filed on AsSalaam's behalf. He returned to regular duty on February 24, 1986.
 
 
 6
 On December 20, 1985, AsSalaam filed an unfair labor practice charge against Local 305 alleging failure to file grievances on his behalf. The NLRB's General Counsel issued a complaint against Local 305 and notice of hearing alleging violation of the duty of fair representation under Sec. 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(1)(A). After a hearing, an administrative law judge (ALJ) rendered a decision and order finding that the union had failed to properly represent AsSalaam and the union does not contest that finding. The ALJ recommended that the union attempt to initiate grievance procedures in AsSalaam's behalf with regard to the November 25 shop steward grievance; that AsSalaam be permitted counsel in the remaining stages at the union's expense or if the grievance was found untimely or there was other procedural difficulty, a make-whole remedy would be appropriate. The union appealed the decision to the NLRB, which found that the General Counsel had established that AsSalaam's grievances were not clearly frivolous and that the burden of proof then shifted to Local 305 to establish the grievances were not meritorious. It affirmed the findings and conclusions but did not adopt the recommended remedies pending a determination of whether the grievances had merit.
 
 
 7
 On remand, the ALJ again found that the union improperly failed to represent AsSalaam. Again, the union does not contest that finding. Following the Board's direction that the burden of proving that the grievances lacked merit was on Local 305, the ALJ also found that the union had not met its burden of disproving merit in three of the grievances.[2] He stated:
 
 
 8
 I do not assume from this precedent that on remand, an administrative law judge must stand in the shoes of an arbitrator and make close calls on questions of fact; rather, the case suggests that the trier of fact must determine whether a respondent has demonstrated by a preponderance of clear and convincing evidence that a grievant would not be likely to prevail in an arbitral forum. On applying this standard to the instant case, and having considered all of the evidence adduced at both hearings, while bearing in mind that doubts must be resolved in the Charging Party's favor, I conclude that the Respondent has not met this stringent burden with respect to three of AsSalaam's grievances.
 
 
 9
 The ALJ's order, among other things, required the union (in the event the grievances could not be maintained due to some procedural difficulty) to pay AsSalaam "a sum of money equal to what he would have earned as wages had he prevailed on his grievances...." The Board affirmed this supplemental decision and order.
 
 
 10
 On appeal, the union contends that the Board erred in ruling that it, and not the General Counsel, must bear the burden of proof as to the merits of AsSalaam's grievances to the extent that it affects any damages the union may pay. The union also challenges the Board's affirmance of the ALJ's ruling that he had no duty to resolve issues of fact in order to determine whether the grievances are meritorious.
 
 II
 
 11
 Although we have not before faced the issue, other circuits that have considered the question of who has the burden of proving grievance merit in a Sec. 8(b)(1)(A) backpay claim against a union have adhered to the prevailing view that the burden of proof rests on the General Counsel. See San Francisco Web Pressmen & Platemakers Union No. 4 v. NLRB, 794 F.2d 420, 423-24 (9th Cir.1986); United Steelworkers of America v. NLRB, 692 F.2d 1052, 1057 (7th Cir.1982); NLRB v. Local 485, Int'l Union of Elec. Radio & Mach. Workers, 454 F.2d 17, 23 (2d Cir.1972).
 
 
 12
 We agree with the rationale of the decisions in those cases, see, e.g., United Steelworkers, 692 F.2d at 1057-58, and reverse and remand with instructions that the Board in turn remand for rehearing before the ALJ under the proper standard. The ALJ should decide if AsSalaam would have won on the merits if the grievances were properly pursued and in deciding that question should resolve any disputed question of fact.
 
 
 13
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 In the first decision, the ALJ found that having invoked provision 547.3 of the Employee Manual to compel AsSalaam's evaluation by the board certified orthopedic surgeon (Fahey), the USPS was obliged to abide by all relevant provisions in that section. In particular:
 .33 Physician Report Questioned. If the medical officer questions the ... determination of the employee's attending physician, no administrative action may be taken to change the employee's compensation or employment status until the medical issue is settled.
 .34 Resolving Determination....
 c. If the results of the fitness-for-duty examination disagree with the findings of the attending physician, the matter ... is referred ... to the OWCP ... for resolution.
 
 
 [2]
 The ALJ found that the union failed to sustain its burden of proof in regard to AsSalaam's grievances concerning his return to regular duty on October 29, his placement on leave without pay status and the denial of limited duty on November 22. The ALJ, however, found that AsSalaam's grievance regarding the inability to contact a steward on October 29 lacked merit